# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| KIRKSTON SPANN II and ROCHELLE LAMPKIN, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC.,<br><br>Defendant. | Case No: 1:24-cv-04704<br><br>Judge Matthew F. Kennelly |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

David S. Almeida
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

## **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

RELEVANT FACTUAL & PROCEDURAL BACKGROUND ................................... 3

    I.     The Security Incident. ..................................................................... 3

    II.    Relevant Procedural Posture. ........................................................ 3

    III.   Negotiation & Mediation. .............................................................. 4

SUMMARY OF THE SETTLEMENT ......................................................................... 5

    I.     The Settlement Class ...................................................................... 5

    II.    Class Member Benefits Under the Settlement. ............................. 6

          A.    Reimbursement of Documented Monetary Losses ................. 6

          B.    Identity Theft Protection and Credit Monitoring ................... 6

          C.    Pro Rata Cash Payment .......................................................... 6

          D.    Remainder Funds .................................................................... 7

          E.    Enhanced Data Privacy and Security Business Practices Commitments .......................................................................... 7

    III.   Notice & Settlement Administration. ............................................ 7

          A.    CAFA Notice ........................................................................... 8

          B.    Notice ....................................................................................... 8

          C.    Settlement Website & Telephone Line .................................... 8

          D.    Objections & Requests for Exclusion. ..................................... 9

    IV.   Scope of the Release. ..................................................................... 10

    V.    Attorneys' Fees, Costs & Service Awards ..................................... 10

ARGUMENT ............................................................................................................... 11

    I.     The Settlement Class Should be Certified for Settlement Purposes. .................. 13

          A.    Certification under Rule 23(a) is Appropriate. ....................... 13

               1.    Numerosity ................................................................... 13

               2.    Commonality ................................................................ 13

               3.    Typicality ..................................................................... 14

               4.    Adequacy of Representation ........................................ 15

          B.    Certification under Rule 23(b)(3) is Appropriate. .................. 15

               1.    Common Questions of Law and Fact Predominate. .... 16

               2.    A Class Action is the Superior Method of Adjudicating this Case. ........................................................................ 17

-i-

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

II.    The Proposed Settlement Satisfies the Standard for Preliminary Approval. ........ 18

    A.    The Strength of Plaintiffs' Case is Balanced Against the Amount Offered in Settlement. ................................................................. 19

    B.    The Complexity, Length & Expense of Continued Litigation Favors Settlement ...................................................................... 21

    C.    There is no Opposition to the Settlement Among the Impacted Parties ..................................................................................... 21

    D.    The Settlement is the Product of Serious, Informed & Non-Collusive Negotiation. ............................................................. 21

    E.    The Parties Engaged in Significant Informal Discovery. ....................... 22

III.    The Court Should Appoint the Proposed Class Representatives, Class Counsel & Settlement Administrator. ................................................. 22

IV.    The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved. ................................................................... 23

CONCLUSION .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Cases** Page(s)

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................ 21

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................. 13

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ............................................................................................................. 16

*AON Corp. Wage & Hour Emp. Pracs. Litig.*,
  2010 WL 1433314 (N.D. Ill. Apr. 8, 2010) ......................................................................... 14

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ........................................................................................ 11, 21

*Butler v. Am. Cable & Tel., LLC*,
  2011 WL 2708399 (N.D. Ill. Jul. 12, 2011) ........................................................................ 12

*Carson v. American Brands, Inc.*,
  450 U.S. 79 (1981) ............................................................................................................... 12

*Chandler v. S.W. Jeep–Eagle, Inc.*,
  162 F.R.D. 302 (N.D. Ill. 1995) .................................................................................... 13, 16

*De La Fuente v. Stokely-VanCamp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ............................................................................................... 14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir.1985) ......................................................................................... 12, 18

*Ebersohl v. Bechtel Corp.*,
  2010 WL 2266736 (S.D. Ill. June 7, 2010) ......................................................................... 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................................. 23

*Eubank v. Pella Corp.*,
  753 F.3d 718 (7th Cir. 2014) ............................................................................................... 16

*Garner v. Healy*,
  184 F.R.D. 598 (N.D. Ill. 1999) .......................................................................................... 15

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ............................................................................................... 11

*Glaspie v. Nat'l Ass'n of Boards of Pharmacy*,
2023 WL 9788487 (N.D. Ill. Oct. 11, 2023) ........................................................ 21

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ................................................................. *passim*

*In re Bromine Antitrust Litig.*,
203 F.R.D. 403 (S.D. Ind. 2001) ...................................................................... 12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) .................................................................. 21

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ...................................................... 13

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
314 F.R.D. 580 (N.D. Ill. 2016) ...................................................................... 12

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ............................................................... 11

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) ...................................................................... 11, 18

*Lucas v. Vee Pak, Inc.*,
2017 WL 6733688 (N.D. Ill. Dec. 20, 2017) ...................................................... 21

*Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*,
834 F.2d 677 (7th Cir. 1987) .......................................................................... 21

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ................................................................................... 23

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) ..................................................................... 15, 16

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) .......................................................................... 16

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ................................................................................... 17

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ................................................................... 14, 16

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
601 F.3d 1159 (11th Cir. 2010) ...................................................................... 17

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................ 24

*Slaughter v. Wells Fargo Advisors, LLC*,
  2017 WL 3128802 (N.D. Ill. May 4, 2017) ................................................... 20

*Swanson v. Am. Consumer Indus., Inc.*,
  415 F.2d 1326 (7th Cir. 1969) ..................................................................... 13

*Turnham v. Nationwide Inbound, Inc.*,
  2024 WL 1172693 (N.D. Ill. Mar. 14, 2024) ................................................ 21

*Wade v. Goldschmidt*,
  673 F.2d 182 (7th Cir. 1982) ....................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................................... 14

*Wong v. Accretive Health, Inc.*,
  773 F.3d 859 (7th Cir. 2014) ....................................................................... 18

**Statutes**

815 ILCS 505/2 ................................................................................................... 4

Mich. Comp. Laws Ann. § 445.901 .................................................................... 4

**Rules**

Fed.R.Civ.P. 23 ........................................................................................... *passim*

**Other Authorities**

1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002) ................ 14

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND
  PROCEDURE § 1778, at 528 (2d ed. 1986) ................................................... 16

ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 (2012) ........... 11

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) .................................... 11

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

Further to Federal Rule of Civil Procedure Rule 23(e), Plaintiffs Kirkston Spann II and Rochelle Lampkin (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully move this Honorable Court for preliminary approval of the proposed settlement of this class action lawsuit (the "Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement signed in November 2024 (the "Settlement Agreement" or "S.A.").[1] Defendant, through counsel, does not oppose this Motion.

## INTRODUCTION

Plaintiffs commenced this putative class action lawsuit on behalf of themselves and the approximately 995,000 other individuals whose personally identifiable information ("PII") and protected health information ("PHI" and collectively with PII, "Private Information") was allegedly compromised in a Security Incident suffered by Defendant Superior Air-Ground Ambulance Service, Inc. ("Defendant" or "Superior Ambulance" and together with Plaintiffs, the "Parties"). Throughout the pendency of the litigation, Defendant has denied all allegations of wrongdoing and liability and asserted defenses to all claims.

Cognizant of the risks, costs and other expenses associated with protracted class action litigation, the Parties—following consolidation of the Related Actions and appointment of consolidated class representatives and interim co-lead counsel (ECF Nos. 14-15 & 20)—engaged in settlement negotiations including a mediation with highly respected private mediator Bennett G. Picker, Esq. of the Stradley Ronon law firm out of Philadelphia, Pennsylvania. By and through

---

[1] Unless otherwise indicated, defined terms herein shall have the meaning ascribed to them in the Settlement Agreement, which is filed as **Exhibit 1** to the Joint Declaration of Court-approved Interim Co-Lead Counsel Gary M. Klinger and David S. Almeida in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Joint Decl.", attached hereto as **Exhibit A**).

those extensive negotiations (leading up to and during the all-day mediation), the Parties reached an agreement providing for significant monetary and equitable relief for the Settlement Class. Most notably, if approved, this Settlement will provide immediate monetary relief to all participating Settlement Class Members as Defendant will establish a $3,250,000 non-reversionary Settlement Fund. From this Settlement Fund, in addition to paying all costs of notice and claims administration as well as any court-approved attorneys' fees and expenses and service awards, all 995,000 Settlement Class Members will be afforded the ability to: (i) claim reimbursement for documented Monetary Losses up to $5,000.00; (ii) submit a claim for two years of three-bureau credit monitoring (with at least $1 million in fraud insurance) and (iii) receive a pro rata share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid.

Given the strength and overall fairness of this Settlement, Plaintiffs respectfully request that this Court: (i) preliminarily approve the Settlement as fair, adequate, reasonable and within the reasonable range of possible final approval; (ii) appoint Plaintiffs Kirkston Spann II and Rochelle Lampkin as Class Representatives; (iii) appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and David S. Almeida of Almeida Law Group LLC as Class Counsel; (iv) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (v) approve the Parties' proposed notice program and confirm that it is appropriate notice that satisfies due process and Rule 23; (vi) schedule a final approval hearing and (vii) set deadlines for members of the Settlement Class to submit claims and to object to or exclude themselves from the Settlement.[2]

---

[2] The Parties' proposed Preliminary Approval Order is **Exhibit D** to the Settlement.

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

## RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### I. The Security Incident.

As detailed in their Consolidated Amended Class Action Complaint (the "Operative Complaint") filed on August 7, 2024, Superior Ambulance is a corporation that provides ambulance and other healthcare-related travel services and currently has over 3,000 employees and provides emergency medical services in five states. *See* ECF 20, Compl. ¶¶ 2 & 27. Plaintiffs and Class Members are current and former patients who entrusted their personal, private information such as their names, addresses, dates of birth, Social Security numbers, driver's license or state identification numbers, financial account information and payment cards information as well as medical treatment and health insurance information to Defendant. *Id*. ¶¶ 5 & 36

Plaintiffs allege that in or about May 2023, an unknown party accessed Defendant's network and was able to access (and possibly to copy or otherwise exfiltrate) data including, but not necessarily limited to, Plaintiffs' and Class Members' Private Information. *See id.* ¶ 36 (citing Defendant's Online Notice & stating that, on or before June 23, 2023, Defendant concluded that an unauthorized actor was able to access and to copy certain files from its network between May 15 and May 23, 2023). The Private Information taken from Defendant's network involved the approximately 995,000 people to whom Defendant provided notice of the Security Incident, beginning in June 2024. *See* Joint Decl. ¶ 13

### II. Relevant Procedural Posture.

Plaintiff Kirkston Spann II filed the first putative class action lawsuit arising from the Security Incident on June 6, 2024. *See* Case No. 1:24-cv-04704, ECF No. 1. Plaintiff Rochelle Lampkin filed a second case one day later on June 7, 2024. *See* Case No. 1:24-cv-04760, ECF No. 1. On June 27, 2024, Plaintiff Kirkston Spann, II filed an Unopposed Motion and Memorandum

of Law in Support to Consolidate Related Actions and Appoint Interim Co-Lead Class Counsel. *See* Case No. 1:24-cv-04704, ECF No. 4. On June 28, 2024, the Court treated the motion as seeking a finding of relatedness under Local Rule 40.4 and granted the motion to that extent. *Id*., ECF No. 7. Thereafter, the Court, on July 8, 2024, the Court conducted a telephonic status and motion hearing and granted the motion to consolidate and appoint interim counsel. *Id.*, ECF Nos. 14-15.

On August 7, 2024, Plaintiffs filed their consolidated Operative Complaint. ECF No. 20. Representative Plaintiffs filed the Operative Complaint on behalf of themselves and a putative Nationwide Class defined as "[a]ll individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023." *Id*. ¶ 213. Plaintiff Rochelle Lampkin, a Michigan resident, also asserts a claim for violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* on behalf of herself and a Michigan Subclass defined as "[a]ll individuals residing in the State of Michigan whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023 (the "Michigan Subclass"). *Id.* In sum, Plaintiffs, on behalf of themselves and the Nationwide Class and Michigan Subclass, allege six causes of action for (i) Negligence, (ii) Breach of Implied Contract, (iii) Breach of Fiduciary Duty, (iv) Breach of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, *et seq*., (v) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* and (vi) Unjust Enrichment.

### III.    Negotiation & Mediation.

The Parties, through counsel, discussed the prospect of trying to resolve this case via private mediation and ultimately agreed to mediate the case on September 18, 2024 with Bennett

G. Picker. *See* Joint Decl. ¶ 16. Leading up to the mediation, the Parties met and conferred on numerous issues and exchanged informal discovery including information regarding, *inter alia*, the allegations in the Operative Complaint, the class size and types of data impacted in the Security Incident as well as information supporting Plaintiffs' damages allegations. *Id.* ¶¶ 14, 24 & 27. Through that informal discovery process, Plaintiffs were able to evaluate potential damages on a class-wide basis. *Id.* ¶ 14 & 24.

At the end of a full day mediation on September 18, 2024, the Parties agreed to a class-wide settlement of the Action that renders the need for further litigation unnecessary and provides substantial monetary benefits and equitable relief to the Class Members. *Id.* ¶¶ 17 & 26. Since then, the Parties have diligently worked to memorialize the agreement in a Settlement Agreement, which was executed in November 2024. The Parties also prepared the necessary documents to present the settlement to this Court for consideration. *Id.* ¶ 32.

SUMMARY OF THE SETTLEMENT

## I.     The Settlement Class.

The $3,250,000 non-reversionary Settlement Fund created by the Settlement Agreement will resolve all claims related to the Security Incident on behalf of the Settlement Class, which is defined as: "the approximately 995,000 individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023." S.A. ¶ 33.[3]

---

[3] Excluded from the Settlement Class are the following individuals and/or entities: (i) Superior Air-Ground Ambulance Service, Inc. and its officers and directors; (ii) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (iii) the Court and (iv) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge. *Id*.

## II.     Class Member Benefits Under the Settlement.

The $3,250,000.00 non-reversionary Settlement Fund will be used to make payments to Settlement Class Members and to pay Administration and Notice Costs (including required CAFA notice) as well as any attorneys' fees and expenses and any service awards approved by the Court. *See* S.A. ¶¶ 42 & 44. The benefits to the Settlement Class Members are reimbursement of Monetary Losses, Financial Account Monitoring and Pro Rata Cash Payments.

### A.  Reimbursement of Documented Monetary Losses

First, Settlement Class Members may make a claim for reimbursement of Monetary Losses fairly traceable to the Security Incident up to $5,000 per Settlement Class Member. S.A. ¶ 50(A). Documented Out-of-Pocket Losses are the unreimbursed costs or expenditures incurred by a Settlement Class Member between May 15, 2023 and the Claims Deadline, as a result of the Security Incident. *Id.* ¶ 50(A)(ii) (noting that Documented Out-of-Pocket Losses include, but are not limited to, unreimbursed costs, expenses or charges incurred addressing or remedying identity theft, fraud or misuse of Personal Information and/or other issues reasonably traceable to the Security Incident).

### B.  Identity Theft Protection and Credit Monitoring

Second, Settlement Class Members may also claim two years of three-bureau credit monitoring, with at least $1 million in fraud insurance. S.A. ¶ 50(C)(i).

### C.  Pro Rata Cash Payment

Third, Settlement Class Members may further claim a Pro Rata Cash Payment, the amount of which to be determined based on the remainder of the Settlement Fund following payment of the Fee Award and Expenses, Service Awards, Administration and Notice Costs, CAFA Notice

- 6 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

costs, the costs of Financial Account Monitoring and claims for reimbursement of documented Monetary Losses. S.A. ¶ 50(B)(i).

### D. Remainder Funds

Fourth, any Remainder Funds shall be distributed in *cy pres* to a charitable organization jointly recommended by the Parties to be approved by the Court (or any other charitable organization approved by the Court). S.A. ¶ 54. Because the balance of the Settlement Fund will be "swept out" in direct Pro Rata Cash Payments to Settlement Class Members making valid claims, it is anticipated that any cy pres award will be nominal, and will only consist of funds associated with uncashed checks or non-redeemed electronic payments.

### E. Enhanced Data Privacy and Security Business Practices Commitments

Fifth, Defendant has provided information (in the form of a written declaration) outlining, *inter alia*, enhanced data security procedures it put in place following the Security Incident. S.A. ¶ 45(a). Within the next 24 months, Defendant will spend up to $2,500,000.00 but not less than $1,500,000.00 on additional information security enhancements. *Id*. To date, Defendant has already spent $2,084,399.08 in security enhancements. *Id.* ¶ 45(b). None of the past or future costs associated with these security procedures has been or will be paid by Plaintiffs or from the Settlement Fund.

## III. Notice & Settlement Administration.

Following a competitive bid process the Parties have selected, subject to court approval, Epiq Systems, Inc. ("Epiq"), an experienced settlement administrator, to administer the Settlement. The notice plan is described in the Declaration of Cameron R. Azari, Esq. Regarding Notice Program ("Azari Decl."), attached hereto as **Exhibit B**.

- 7 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

A. *CAFA Notice*

Within ten (10) days of filing this motion for Preliminary Approval, Superior Ambulance shall cause a CAFA Notice to be served on the appropriate government officials, the cost of which shall be paid from the Settlement Fund. S.A. ¶¶ 2 & 49.

B. *Notice*

Within ten days of the entry of the PAO, Defendant will provide Epiq with the Settlement Class Member Information. S.A. ¶ 56. The Settlement Class Member Information will include the name and last known physical address of each Settlement Class Member that Defendant possesses. *Id.* For any Settlement Class Member whose information does not include a valid address, the Settlement Administrator shall use the available information to conduct a reverse look-up search to obtain a physical address to mail the Notice. *Id.*

Within forty-five (45) days of the entry of the PAO, Epiq shall send by First Class Mail the Postcard Notice or an Email Notice (to those Settlement Class Members for whom a good email address is available) to all Settlement Class Members. S.A. ¶ 57(b). Before any mailing occurs, the Settlement Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS. *Id.* The Settlement Website shall provide the members of the Settlement Class with the ability to complete and to submit the Claim Form electronically. S.A. ¶ 36. Settlement Class Members must properly complete a Claim Form and timely deliver it to the Settlement Administrator within ninety (90) days from the Class Notice Date. *Id.* ¶ 49.

C. *Settlement Website & Telephone Line*

Prior to mailing the Postcard Notice or sending the Email Notice, Epiq shall establish a dedicated Settlement Website informing Class Members of the terms of the Settlement as well as

their rights, relevant dates and deadlines and related information. The Settlement Website shall include, in .pdf format and available for download, the following: (i) the Class Notice, (ii) the Claim Form, (iii) the Preliminary Approval Order, (iv) this Settlement Agreement, (v) the Operative Complaint and (vi) any other materials agreed upon by the Parties and/or required by the Court. S.A. ¶ 36. The Settlement Website shall provide Class Members with the ability to complete and submit the Claim Form electronically. *Id.*

Epiq will also establish a toll-free telephone number. Azari Decl. ¶ 28. Callers will be able to hear an introductory message and will have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Long Form Notice and Claim Form ("Claim Package") be mailed to them. *Id.* This automated telephone system will be available 24 hours per day, 7 days per week. The toll-free telephone number will be prominently displayed in all notice documents. *Id.*

D. *Objections & Requests for Exclusion.*

Any Settlement Class Member who wishes to opt out of the Settlement will have until sixty (60) days after the Notice Date to provide written notice by mail to Epiq that they would like to be excluded from the Settlement Class, with the Class Notice informing each Settlement Class Member of this right. S.A. ¶ 58. A valid request for Exclusion must: (i) state the Settlement Class Member's full name and current address and signature, (ii) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class and (iii) be postmarked no later than sixty days after the Class Notice Date. *Id.* Settlement Class Members who fail to submit a valid and timely request for exclusion shall be bound by the Settlement Agreement. *Id.*

Any Settlement Class Member who wishes to object must do so in writing to the Settlement Administrator at the address set forth in the Class Notice within sixty (60) days after the Notice

Date. S.A. ¶ 63. Each objection must set forth all of the following information in writing: (i) the objector's full name, current address, current telephone number and be personally signed, (ii) the case name and case number, *Spann et al. v. Superior Air-Ground Ambulance Service, Inc.*, Civil Action No. 1:24-cv-04704-MFK, (iii) documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice or Email Notice he or she received, (iv) a statement of the position(s) the objector wishes to assert including the factual and legal grounds for the position(s), (v) a copy of any other document(s) that the objector wishes to submit in support of his/her position, (vi) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing and (vii) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address and telephone number of his/her counsel. *Id.* ¶ 64.

## IV.    Scope of the Release.

Class Members who do not timely and validly exclude themselves from the Settlement will be deemed to have released Defendant from any and all claims arising from or related to the Security Incident. *See* S.A. ¶ 68. The scope of the release is detailed in Section VI of the Settlement Agreement and is limited to claims arising out of the same nucleus of operative facts (the "alleged Security Incident") as any of the claims alleged or asserted in the Operative Complaint. *Id*.

## V.    Attorneys' Fees, Costs & Service Awards.

No later than fourteen days before the Objection Date and Request for Exclusion Deadline, Class Counsel will formally request the Court to approve an award of attorneys' fees up to one-third of the Settlement Fund plus reasonable litigation expenses. S.A. ¶ 47. Class Counsel will also request a service award of up to $2,500 for Plaintiffs Kirkston Spann II and Rochelle Lampkin in recognition of their assistance and time spent in this Action and the risks taken by them as the Class Representatives in commencing the Action, both financial and otherwise. *Id.* ¶ 46.

- 10 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

**ARGUMENT**

Courts "naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Any class action settlement requires: (i) the Court to preliminarily approve it; (ii) that members of the settlement class receive notice and (iii) that the Court hold a final hearing to decide whether it is fair, reasonable and adequate. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also* Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010); FED.R.CIV.P. 23(e).

In considering preliminary approval, the Court must determine whether the settlement is within the "range of possible approval"—within the range of what might be found fair, reasonable and adequate. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010); *Gautreaux*, 690 F.2d at 621 n.3. When parties seek preliminary approval of a class action settlement agreement under Rule 23(e), the court must: (i) determine if it will likely be able to certify the class for purposes of judgment; (ii) determine whether the proposed settlement is within the range of possible approval under Rule 23(e) and (iii) approve the notice plan and direct notice be provided "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1084 (N.D. Ill. 2021) (internal citations omitted).

During preliminary approval, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 (2012). When analyzing whether a proposed settlement is fair, reasonable and adequate, courts "should refrain from

resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *In re AT&T Mobility Wireless*, 270 F.R.D. at 346 (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir.1985)). As a result, Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See, e.g.*, *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 588 (N.D. Ill. 2016) ("At this initial stage, the court is not resolving the merits of the controversy or making a precise determination of the parties' respective legal rights. This is why some courts at this stage perform a summary version of the exhaustive final fairness inquiry.") (cleaned up); *Butler v. Am. Cable & Tel., LLC*, 2011 WL 2708399, at *8 (N.D. Ill. Jul. 12, 2011) ("Although the 'fair, reasonable, and adequate standard' and the factors used to measure it are ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase.") (citations omitted); *In re Bromine Antitrust Litig.*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low"). The Supreme Court has cautioned that, in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

As detailed herein, this Settlement is fair, reasonable, adequate and well within the range of possible approval because it provides immediate and tangible benefits to all Settlement Class Members, avoids the uncertainty, cost and delay of protracted litigation not to mention obviates the need for the Court and the Parties to continue to resolve contentious factual and legal issues. The Settlement further satisfies the factors set forth by the Seventh Circuit for assessing whether a proposed settlement is within the range of fair, reasonable and adequate.

## I.     The Settlement Class Should be Certified for Settlement Purposes.

The benefits of a settlement of a class action can be realized only through the certification of a settlement class. *See, e.g.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiffs must satisfy the Court that the requirements of Rule 23(a) and one of the requirements of Rule 23(b) are met. The requirements of Rule 23(a) are numerosity, commonality, typicality and adequacy. *See* Fed. R. Civ. P. 23(a). Here, Plaintiffs seek certification under Rule 23(b)(3) which provides that certification is appropriate when common questions of law or fact predominate over individualized issues and a class action is the superior method of handling the case. *See* FED.R.CIV.P. 23(b)(3).

### A.  Certification under Rule 23(a) is Appropriate.

#### 1.  *Numerosity*

Numerosity under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. FED.R.CIV.P. 23(a)(1). Generally, classes of forty or more members meet this requirement. *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307-08 (N.D. Ill. 1995) (finding fifty class members satisfy numerosity requirement). Impracticable does not mean impossible, "but rather, extremely difficult and inconvenient. When determining whether joinder is impracticable, the court considers not only the size of the class, but also its geographic dispersion, the relief sought, and the ability of individuals to bring their own claims." *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *46 (N.D. Ill. Mar. 31, 2017) (cleaned up). Here, the joinder of 995,000 Class Members would certainly be impracticable and thus the numerosity element is satisfied. *See* Joint Decl. ¶ 41.

#### 2.  *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."

FED.R.CIV.P. Rule 23(a)(2)'s commonality requirement is satisfied where the claims asserted "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality focuses on the relationship of common facts and legal issues among class members. *See, e.g.*, *AON Corp. Wage & Hour Emp. Pracs. Litig.*, 2010 WL 1433314, at *6 (N.D. Ill. Apr. 8, 2010); 1 H. Newberg & A. Conte, Newberg on Class Actions, § 3:10 at 271 (4th ed. 2002).

Here, Plaintiffs' claims turn on whether Defendant's data security was adequate to protect Class Members' Private Information. That inquiry does not vary from Class Member to Class Member and can be fairly resolved—for settlement purposes—all at once. This requirement in the context of cybersecurity incident class action settlements is readily satisfied. *See, e.g.*, *Remijas v. The Neiman Marcus Group, LLC*, No. 1:14CV01735 (N.D. Ill. Nov. 15, 2019); *Fox v. Iowa Health System*, No. 3:18CV00327 (W.D. Wis. Sep. 16, 2020).

3. *Typicality*

For the typicality requirement, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. FED.R.CIV.P. 23(a)(3). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). While "the typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members," the requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of

the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotations omitted); *see also Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999) (finding typicality satisfied where plaintiffs, like the class, "believed that they were getting something more than they ultimately received"). Here, the claims all involve Defendant's actions and inactions regarding the Security Incident and the claims are all based on the same legal theories. Thus, Plaintiffs' claims are typical of those of the Class and they are appropriate Class Representatives.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). Adequacy is satisfied where the class representative (i) has retained competent counsel, (ii) has a sufficient interest in the outcome of the case to ensure vigorous advocacy and (iii) does not have antagonistic interests to the class. "[I]t is clear that adequacy of representation is established when no collusion is shown between the representative and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in the fulfillment of his duty." *Ebersohl v. Bechtel Corp.*, 2010 WL 2266736, at *2 (S.D. Ill. June 7, 2010) (quoting *Wade v. Goldschmidt*, 673 F.2d 182, 186 n.7 (7th Cir. 1982)).

Plaintiffs have no conflicts with the Class and have participated actively in the case, and Class Counsel have significant relevant experience litigating scores of privacy related class action matters. *See* Joint Decl., ¶¶ 32, 42, 50-62 & Exs. 2 & 3 thereto (noting that Messrs. Klinger and Almeida have litigated hundreds of privacy-related class actions and are lead or co-lead counsel in many actions in state and federal courts throughout the country). Thus, Plaintiffs and Class Counsel more than satisfy the adequacy prong.

### B. Certification under Rule 23(b)(3) is Appropriate.

- 15 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

Plaintiffs seek to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. Here, Rule 23(b)(3) is satisfied because: (i) questions of law and fact common to Class Members predominate over any individual questions and (ii) the class action mechanism is superior to any other methods for the fair and efficient adjudication of the controversy. FED.R.CIV.P. 23(b)(3).

### 1. *Common Questions of Law and Fact Predominate.*

Here, common factual and legal questions predominate. Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each element of [the] claim is susceptible to classwide proof." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013). Plaintiffs need only show that "common questions 'predominate over any questions affecting only individual [class] members.'" *Id.* (quoting FED.R.CIV.P. 23(b)(3)); *see also Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010), *reversed on other grounds*, *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) (The predominance requirement may be satisfied when "the central questions in the litigation are the same for all class members"). Class action status is appropriate where common questions are a major aspect of a case and can be resolved at once. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, at 528 (2d ed. 1986). These questions need not be dispositive of the entire action, *id.* at 528-29, as the presence of "some factual variation among the class grievances will not defeat a class action." *Rosario*, 963 F.2d at 1017; *see also Chandler*, 162 F.R.D. at 308 (N.D. Ill. 1995) ("It is well-established . . . that the presence of some individualized issues does not overshadow the common nucleus of operative fact presented when the defendant has engaged in standardized conduct toward the class.").

Here, Plaintiffs' claims are based on Defendant's uniform conduct regarding a single

Security Incident that affected all proposed Settlement Class Members in a similar fashion and for the same amount of time. Because these core issues involve uniform conduct common to all proposed Class Members, the Rule 23(b)(3) predominance requirement is satisfied.

2. *A Class Action is the Superior Method of Adjudicating this Case.*

The second prong of Rule 23(b)(3)—that a class action is superior to other available methods for the fair and efficient adjudication of the controversy—is also readily satisfied here. *See* FED.R.CIV.P. 23(b)(3). Determining superiority involves examining "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010) (internal quotation omitted).

Here, there is little reason for proposed Class Members to prosecute individual actions. While the total economic harm caused by this Data Incident is significant, each individual claim is too small compared to the costs of litigating it separately. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Although the injuries resulting from Defendant's alleged failure to secure and safeguard the Private Information of the Class are real, the cost of individually litigating against Defendant would easily exceed the value of any relief that could be obtained by any one consumer. Thus, a class action is a superior method of adjudication.

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable: the amount in dispute for each class member is too small, the technical issues involved are too complex and the required expenses too costly. Thus, the Court may certify the Class for settlement under Rule 23(b)(3).

II.     **The Proposed Settlement Satisfies the Standard for Preliminary Approval.**

After it has been determined that certification of the Class is appropriate, the Court must then determine whether the Settlement is worthy of preliminary approval such that notice should be provided to the class. This Settlement satisfies the factors set forth by the Seventh Circuit in assessing whether a proposed settlement is within the range of fair, reasonable and adequate:

> In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed.

*In re AT&T Mobility Wireless*, 270 F.R.D. at 346; *see also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (reiterating "longstanding guidance" of the relevant factors for determining fairness of class action settlement). In weighing these factors, a court should "recognize[] that the first factor, the relative strength of the plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199. The Seventh Circuit has explained that courts should "consider the facts in the light most favorable to the settlement." *Id.* at 1198-99. Further, "[t]he essence of settlement is compromise . . . . Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker & Sons*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [it] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Consideration of these factors confirms that the proposed Settlement here is well "within the range of possible approval" and weighs in favor of preliminary approval.

A. *The Strength of Plaintiffs' Case is Balanced Against the Amount Offered in Settlement.*

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *In re AT&T Mobility Wireless*, 270 F.R.D. at 346 (internal citations omitted). The Seventh Circuit is clear that "[a]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Id.* at 347. Plaintiffs strongly believe in their case but also recognize the risks and costs as well.

As an initial matter, fact-intensive inquiries are pervasive in this action. Plaintiffs' contentions that Defendant failed to secure and to safeguard their Private Information involves consideration of many facts surrounding the Security Incident including, but not limited to, the manner in which the information was potentially compromised, the length of time the information was compromised, the types of information involved and whether any of the information was accessed or used as a result. Proving causation in this case presents a significant hurdle. Quantifying damages is similarly difficult. Defendant would attempt to present certain materials as evidence and arguments that would seek to demonstrate that: (i) their security was adequate; (ii) Plaintiffs' damages were not, in whole or in part, caused by the Security Incident and (iii) assessments by allegedly independent third parties found that Defendant complied with applicable data security standards. Defendant would also likely claim that it addressed any injury to the Class by sending written notice of the Security Incident to Class members with an offer of free credit monitoring.

Second, if the Settlement is not approved, the litigation will resume, and the case may proceed to trial and later to appeal. The Parties disagree about the merits of Plaintiffs' claims, and there is certainly uncertainty about the ultimate outcome of this Action.

- 19 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

Third, valuing damages is difficult. Even without any discount for the risks of continued litigation, most if not all injuries suffered by Plaintiffs and Class Members were relatively small and establishing a nexus between their injuries and the Security Incident may be problematic. The value of any recovery erodes over time and litigation expenses increase.

Fourth, Defendant would oppose class certification. Plaintiffs believe that class certification is appropriate but are cognizant of the risk that the Court may not certify a class or may limit the size of any class. This Court or the Seventh Circuit might ultimately conclude that individualized questions predominate over any common questions. Moreover, even if Plaintiffs are successful in gaining certification of their claims, the class certified may ultimately be smaller than the nationwide class to whom the Settlement will confer its benefits.

Finally, the time and resources it will take to litigate the case militates in favor of preliminary approval. *See, e.g.*, *In re AT&T Mobility Wireless*, 270 F.R.D. at 347 ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (citations omitted); *Slaughter v. Wells Fargo Advisors, LLC*, 2017 WL 3128802, at *6 (N.D. Ill. May 4, 2017) (granting final approval). Here, if the Settlement is approved, the Settlement Class will realize immediate benefits once the claims process is completed. Factually, it is clear that the Security Incident occurred; however, the legal questions, such as whether Defendant is liable and the valuation of damages remain disputed. The present value of the Settlement is significant compared to the risks—thus the Settlement merits approval. *See* Joint Decl. ¶¶ 34 & 37.

- 20 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

*B.   The Complexity, Length & Expense of Continued Litigation Favors Settlement.*

The "complexity, length and expense of continued litigation, are relevant factors in assessing the Settlement. *See, e.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015); *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011). Here, the Settlement renders a final decision on several disputed factual and legal issues unnecessary. While the Parties have conducted informal discovery, if litigation resumes, more discovery would be needed including, but not limited to, formal and expert discovery. The costs of testifying experts who would opine regarding, among other things, the economic harms caused to consumers, discovery, class certification, summary judgment motion practice as well as other pre-trial and trial expenses would be substantial not to mention that all of this litigation would substantially delay final resolution. Therefore, this factor also weighs in favor of preliminary approval.

*C.   There is no Opposition to the Settlement Among the Impacted Parties.*

Prior to class notice, no Class Members, including the named Plaintiffs, have indicated any objection to the proposed Settlement to Class Counsel, *see* Joint Decl. ¶ 39. Class Counsel will revisit this issue as part of the Final Approval Hearing.

*D.   The Settlement is the Product of Serious, Informed & Non-Collusive Negotiation.*

A settlement is presumed to be fair and reasonable when it is the result of arms'-length negotiations. *See, e.g.*, *Mars Steel Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325; *Turnham v. Nationwide Inbound, Inc.*, 2024 WL 1172693, at *1 (N.D. Ill. Mar. 14, 2024); *Glaspie v. Nat'l Ass'n of Boards of Pharmacy*, 2023 WL 9788487, at *1 (N.D. Ill. Oct. 11, 2023). This presumption is applicable here.

As discussed above, the Settlement results from arm's-length negotiations including a mediation session with an experienced data breach class action mediator, Bennett G. Picker, Esq., and numerous other telephone conferences between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after informal discovery and meticulous investigation of the Data Incident. *See* Joint Decl. ¶¶ 24 & 27. Given these facts, the Settlement is shown to be non-collusive.

### E. The Parties Engaged in Significant Informal Discovery.

Class Counsel investigated, in detail, the facts and law relating to the matters alleged. Informal discovery, involving the production of financial disclosures, continued even after the Parties' mediation. *See* Joint Decl. ¶¶ 26-28. Plaintiffs learned the details of the underlying facts, including *inter alia*: how many people were impacted; what kind of data was stolen and other vital facts to understand the Security Incident. *Id.* And through Confirmatory Financial Discovery, Plaintiffs reviewed Defendant's documentation regarding its financial condition. *Id.* As a result of this work, Plaintiffs and Class Counsel fully understand the merits of this case—weighing in favor of preliminary approval.

### III. The Court Should Appoint the Proposed Class Representatives, Class Counsel & Settlement Administrator.

Plaintiffs seek to be appointed as Class Representatives. All Plaintiffs have cooperated with counsel and assisted in the preparation of the complaints. *See* Joint Decl. ¶¶ 18 & 42. Plaintiffs are committed to continuing to vigorously prosecute this case all the way through the Court's final approval. The Court should appoint them as Class Representatives. Also, for the reasons previously discussed, the Court should designate Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and David S. Almeida of Almeida Law Group as Class Counsel. Finally,

- 22 -

Plaintiffs' Unopposed Motion for Preliminary Approval of
Class Action Settlement and Memorandum in Support, Case No. 1:24-cv-04704

the parties have agreed, subject to Court approval, that Epiq shall serve as Settlement Administrator. Epiq and its principals have a long history of successful settlement administrations in class actions and therefore the Court should appoint Epiq as Settlement Administrator. Azari Decl. ¶¶ 4-5.

## IV.    The Proposed Form and Manner of Notice to the Class is Reasonable and Should be Approved.

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED.R.CIV.P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." FED.R.CIV.P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Plan here provides the best notice practicable. The Parties negotiated the form of the Notice with Epiq's aid. *See* Joint Decl. ¶¶ 43-45. The Notice will be disseminated to Settlement Class Members whose names and emails or addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. Epiq will administer the Settlement Website containing important and up-to-date information about the Settlement and provide a toll-free telephone helpline. *See* Azari Decl. ¶¶ 21-29.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." FED.R.CIV.P. 23(h)(1). The proposed Notice Plan satisfies this requirement as it notifies Settlement

Class Members of Class Counsel's intended application for attorneys' fees and expenses. It also complies with Rule 23 and due process because, *inter alia*, it informs the Class of: (i) the nature of the action; (ii) the essential terms of the Settlement, including the definition of the Class, the claims asserted and the benefits offered; (iii) the binding effect of a judgment absent exclusion; (iv) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that Class Members may make an appearance through counsel; (v) information about the payment of proposed Attorneys' fees and expenses and (vi) how to make inquiries through the Website or toll-free number. *See* FED.R.CIV.P. 23(c)(2)(B).

Accordingly, the Notice Plan is designed to provide the best notice practicable, apprises Class Members of the action, and gives them an opportunity to object or exclude themselves. *See, e.g.*, *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. at 351 (finding similar class notice plan email notice to settlement class members was the best practicable and satisfied concerns of due process *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 596 (N.D. Ill. 2011) (similar with notice plan of direct mail notice). Thus, the Court should approve the Notice Plan. FED.R.CIV.P. 23(c)(2)(A).

<u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs, by and through their counsel, respectfully submit that this Honorable Court should: (i) preliminarily approve the terms of the Settlement as fair, adequate and reasonable; (ii) provisionally certify the Class pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only; (iii) approve the Notice Program and approve the form and content of the Notice; (iv) approve the procedures set forth in the Settlement Agreement for exclusion and objection; (v) stay all proceedings in this matter unrelated to the Settlement pending final approval; (vi) stay and/or enjoin, pending final approval, any actions brought by Class

Members concerning a released claim and (vii) schedule a Final Approval Hearing for a time and date convenient for the Court for the purpose of determining whether the Settlement is fair, reasonable and adequate and, therefore, deserving of final approval.

Date: November 7, 2024               Respectfully Submitted,

*/s/ David S. Almeida*
David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com

***Interim Co-Lead Class Counsel***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 7, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ David S. Almeida
David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com