# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KIRKSTON SPANN II and ROCHELLE LAMPKIN, *on behalf of themselves and all others similarly situated,* <br><br> Plaintiffs, <br><br> v. <br><br> SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC., <br><br> Defendant. | Case No: 1:24-cv-04704 <br><br> Judge Matthew F. Kennelly |

**JOINT DECLARATION OF GARY M. KLINGER AND DAVID S. ALMEIDA**
**IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Gary M. Klinger and David S. Almeida jointly declare and state as follows:

1.  I, Gary M. Klinger, am an attorney admitted and licensed to practice law before the courts of the state of Illinois. I am a senior partner at the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"). I serve as co-counsel of record for Plaintiffs Kirkston Spann II and Rochelle Lampkin ("Plaintiffs") in the above-captioned case (the "Action").

2.  I, David S. Almeida, am an attorney admitted and licensed to practice law before the courts of the states of New York, Arizona, Illinois and Wisconsin. I am the Founder and Managing Partner of the Almeida Law Group LLC ("ALG"), a class action litigation boutique specializing in data privacy and consumer fraud cases. I also serve as co-counsel of record for Plaintiffs in the Action.

3.  Throughout this litigation, we and our respective law firms have been responsible for the investigation into and prosecution of Plaintiffs' Claims on behalf of the proposed Settlement Class.

1

4. We make this Joint Declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Except where otherwise stated, we each have personal knowledge of the facts set forth in this Joint Declaration based on active participation in all aspects of the prosecution and resolution of this consolidated class action lawsuit. If called upon to testify, we each could and would testify competently to the truth of the matters stated herein.

5. Filed concurrently herewith as **Exhibit 1** is a true and correct copy of the Class Action Settlement Agreement (the "Settlement Agreement" or "Agreement")[1] entered into by Plaintiffs, on behalf of themselves and the proposed Settlement Class, and Defendant Superior Air-Ground Ambulance Service, Inc. ("Defendant" or "Superior Ambulance" and together with Plaintiffs, the "Parties"). The following exhibits are attached to the Settlement:

- **Exhibit A**: Claim Form

- **Exhibit B:** Email Notice

- **Exhibit C**: Long Form Notice

- **Exhibit D:**    Postcard Notice

- **Exhibit E**: the Parties' proposed Preliminary Approval Order.

### SUMMARY OF THE ACTION

6. On June 6, 2024, Plaintiff Kirkston Spann II, on behalf of himself and all others similarly situated, filed a Complaint against Superior Ambulance in the United States District Court for the Northern District of Illinois. *See* Case No. 1:24-cv-04704, ECF No. 1.

---

[1] Unless otherwise indicated, capitalized terms herein refer to and have the same meaning as in the Settlement.

7. On June 7, 2024, Plaintiff Rochelle Lampkin, on behalf of herself and all others similarly situated, filed a Complaint against Superior Ambulance in the United States District Court for the Northern District of Illinois. *See* Case No. 1:24-cv-04760, ECF No. 1.

8. On June 27, 2024, Plaintiff Kirkston Spann, II filed an Unopposed Motion and Memorandum of Law in Support to Consolidate Related Actions and Appoint Interim Co-Lead Class Counsel. *See* Case No. 1:24-cv-04704, ECF No. 4.

9. On June 28, 2024, the Court treated the motion as seeking a finding of relatedness under Local Rule 40.4 and granted the motion to that extent. *Id.*, ECF No. 7.

10. On July 8, 2024, the Court held telephonic status and motion hearings and granted the motion to consolidate and appoint interim counsel. *Id.*, ECF Nos. 14 & 15.

11. On August 7, 2024, Plaintiffs, on behalf of themselves and purportedly a nationwide Class, filed a Consolidated Class Action Complaint (the "Operative Complaint") against Superior Ambulance in the United States District Court for the Northern District of Illinois, asserting causes of action for (i) Negligence, (ii) Breach of Implied Contract, (iii) Breach of Fiduciary Duty, (iv) Breach of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, *et seq.*, (v) violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.* and (vi) Unjust Enrichment.

12. Plaintiffs allege that in or about May 2023, an unknown party accessed Defendant's network and was able to access (and possibly to copy or otherwise exfiltrate) data including, but not necessarily limited to, Plaintiffs' and Class Members' Private Information. *See* ECF 20, ¶ 36 (citing Defendant's Online Notice & stating that, on or before June 23, 2023, Defendant concluded that an unauthorized actor was able to access and to copy certain files from its network between May 15 and May 23, 2023).

13. The Private Information taken from Defendant's network involved the approximately 995,000 people to whom Defendant provided notice of the Security Incident, beginning in June 2024.

14. Throughout the Summer of 2024, the Parties had numerous phone calls and exchanged information so that each side could better understand the nature and extent of the Security Incident, potential merits and defenses and the potential damages that Defendant could face if Plaintiffs were successful in litigation.

15. The Parties agreed that mediation with an experienced mediator could be helpful in attempting to reach a resolution of the matter.

16. On September 18, 2024, the Parties, through experienced and accomplished counsel, engaged in adversarial, arm's length negotiations including an all-day mediation conducted by Mr. Bennett G. Picker, Esq., of the Stradley Ronon law firm in Philadelphia, Pennsylvania. Mr. Picker is a highly-experienced and highly-sought after mediator, with particular experience in resolving data security and privacy class action lawsuits.

17. The mediation resulted in a settlement in principle and, since then, the Parties have worked diligently to reduce their agreement to a final, written Settlement Agreement, which was executed in November 2024.

### PLAINTIFFS' & COUNSELS' ROLE IN PROSECUTING & SETTLING THIS CLASS ACTION LAWSUIT

18. Plaintiffs and their Counsel zealously represented the interests of the proposed Settlement Class and committed substantial resources to the prosecution and eventual resolution of the Settlement Class's claims.

19. Before filing their respective complaints, Counsel for each Plaintiff undertook a robust investigation into the factual issues raised in this Action including examining Defendant's

4

Security Incident notice and related information submitted to state Attorney Generals. Counsel also researched the applicable law to determine how the privacy claims applied to these facts and to anticipate and address Defendant's potential defenses.

20. After filing their respective complaints, Counsel undertook additional efforts to coordinate leadership and consolidation and determine the best path forward for the proposed class.

21. Counsel then filed an Operative Complaint on behalf of a Nationwide Class and Michigan Sub Class.

22. After filing their Operative Complaint, Counsel undertook further efforts to prosecute Plaintiffs' claims including, but certainly not limited to, scheduling and participating in meet and confers with Counsel for Defendant and additional substantial legal research.

23. After numerous discussions among the Parties regarding the merits of Plaintiffs' claims, the Parties scheduled mediation with Bennett G. Picker, Esq.

24. Leading up to the mediation, the Parties engaged in pre-mediation conferences, engaged in informal pre-mediation discovery and prepared and reviewed detailed mediation statements and other supporting materials outlining their respective legal positions regarding the merits of Plaintiffs' claims, Rule 23 considerations and the scope of damages. Plaintiffs learned the details of the underlying facts, including *inter alia*: how many people were impacted; what kind of data was stolen and other vital facts to understand the Security Incident.

25. On September 18, 2024, the Parties participated in a day-long mediation before Mr. Picker. During that mediation, the parties shared additional information including via direct communications between counsel in the presence of the mediator bearing on the merits of Plaintiffs' claims, the size and nature of the class and Defendant's financial position. Based on the

issues surrounding Defendant's Security Incident, Counsel determined that the Settlement Class can be identified.

26.     Toward the end of the day-long mediation the Parties reached an agreement in principle to resolve the remaining claims in the Action on a class-wide basis subject to Confirmatory Financial Discovery.

27.     This Settlement was reached only after informal discovery and meticulous investigation of the Data Incident. Class Counsel investigated, in detail, the facts and law relating to the matters alleged. Informal discovery, involving the production of financial disclosures, continued even after the Parties' mediation.

28.     Over the next several weeks following the agreement in principle, and after additional phone calls, the Parties continued to discuss Defendant's financial position and reviewed Confirmatory Financial Discovery as well as the resources Defendant expended on security enhancements after the Security Incident and the resources Defendant would commit to spending on security enhancements as injunctive relief to finalize the terms incorporated into the Settlement Agreement.

29.     In November 2024, the parties finalized and executed the proposed Settlement Agreement.

30.     The parties agreed to the terms of the Settlement through experienced counsel (*see infra*) who possessed all the information necessary to evaluate the case, determine the contours of the proposed Settlement Class, analyze the ascertainability of the Settlement Class and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

31. Further, Plaintiffs' Counsel have vigorously represented the Class in this Action and will continue to do so throughout preliminary and final approval of the Settlement (if approved).

32. Our efforts on behalf of the proposed Settlement Class include (as noted in part above):

    i.    conducting a thorough pre-suit investigation, including a review of Defendant's Security Incident.

    ii.    gathering Plaintiffs' documents and relevant information, including data breach notices and dark web alerts;

    iii.    preparing a detailed complaint;

    iv.    finalizing a motion for consolidation and leadership;

    v.    analyzing the legal arguments raised by Defendant;

    vi.    preparing a consolidated complaint;

    vii.    tracking relevant case law in similar data breach cases;

    viii.    requesting and reviewing relevant informal discovery leading up to, during, and after mediation;

    ix.    preparing mediation statements;

    x.    participating in mediation and extensive subsequent settlement discussions and

    xi.    achieving a very favorable Settlement on behalf of the Settlement Class.

33. Plaintiffs have been actively engaged in this matter; they provided pertinent information to counsel regarding the data breach notices they received from the Security Incident and monitoring credit and dark web alerts after receiving notice of the Security Incident. Plaintiffs have stayed informed about the case, worked with counsel to prepare and review the complaints and other pleadings, and have communicated regularly with counsel throughout the case, up to and including evaluation and approval of the proposed Settlement Class. Plaintiffs are committed to continuing to vigorously prosecute this case all the way through the Court's final approval

## RECOMMENDATION OF COUNSEL

34. Based on thorough examination and investigation of the facts and law relating to Plaintiffs' claims on behalf of the Settlement Class, including the information exchanged before,

during, and after mediation, we believe the proposed Settlement is in the best interest of the Settlement Class. Our extensive factual and legal investigation informed us about the strengths and weaknesses of Plaintiffs' claims as well as Defendant's potential defenses and allowed us to conduct an informed, fair and objective evaluation of the value and risks of continued litigation.

35.     We recognize that despite our belief in the strength of Plaintiffs' Claims and Plaintiffs' and the proposed Class's ability to secure a judgment and award of damages, the expense, duration and complexity of protracted litigation would be substantial and the outcome uncertain.

36.     We also are mindful that absent the proposed Settlement, Defendant's defenses and current financial situation could deprive Plaintiffs and the proposed Settlement Class of any potential relief whatsoever. Defendant would continue to challenge liability, would oppose class certification vigorously and would prepare a competent defense at trial. Defendant could also appeal any adverse decision on the merits or challenge the award of statutory damages.

37.     The present value of the Settlement is significant compared to the risks.

38.     In our professional opinion, the relief provided by the proposed Settlement is fair, adequate, reasonable and in the best interests of the Settlement Class, and we respectfully recommend it to the Court for its preliminary approval. Plaintiffs' Counsel have conferred with Plaintiffs, who also support the proposed Settlement.

39.     Prior to class notice, no Class Members, including the named Plaintiffs, have indicated any objection to the proposed Settlement to Class Counsel.

40.     The facts of this case fully support certification of the Settlement Class.

41.     The joinder of 995,000 Class Members would certainly be impracticable and thus the numerosity element is satisfied.

8

42.     Plaintiffs have no conflicts with the Class and have participated actively in the case, and Class Counsel have significant relevant experience litigating scores of privacy related class action matters.

## SELECTION OF SETTLEMENT ADMINISTRATOR

43.     We selected Epiq Systems, Inc. ("Epiq"), based in part on its experience in similar data breach class actions and a notice plan proposal that includes innovative, thoughtful and technologically sophisticated means of providing notice to Settlement Class Members at a reasonable cost. To ensure that we obtained the best value for the Settlement Class, we received proposals from a total of three claims administration companies. Epiq submitted the strongest proposal.

44.     The cost of administering the Settlement will depend on a variety of factors, including the number of claims submitted by Settlement Class Members. Epiq estimates the cost of administration at approximately $335,000.00.

45.     The Parties negotiated the form of the Notice with Epiq's aid. It is also our opinion, based on our collective experience, that the Claim Form, Postcard/Short Form Notice and Long Form Notice, accurately and plainly explain the Settlement Benefits and how to obtain them, offer a clear opportunity for members of the Settlement Class to exclude themselves if they so choose and provide a mechanism for the Settlement Class to share their opinions about the settlement with the Court.

46.     It is our further opinion that the Notice Plan here provides the best notice practicable.

## ROLES & QUALIFICATIONS OF COUNSEL

47.     During the course of this litigation, Milberg and ALG worked tirelessly to obtain

9

the excellent settlement result proposed here.

48. The Court has already appointed Gary M. Klinger and David S. Almeida Interim Co-Lead Class Counsel. *See* ECF No. 15.

49. Under the terms of the Settlement, attorneys from both law firms are designated Class Counsel. *See* S.A. § 5.

### GARY M. KLINGER OF MILBERG

50. Mr. Klinger is the Chair of Milberg's Cybersecurity and Data Privacy Practice Group and he is recognized as one of the most respected data privacy attorneys in the United States. He has extensive experience serving as leadership in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (appointed to the leadership committee in hub-and-spoke data breach MDL involving more than 95 million consumers); *Isaiah v. loanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal) (appointed co-lead counsel in a data breach impacting 17 million consumers). Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

51. Mr. Klinger has settled on a classwide basis more than 100 class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the

country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions.

52.     Mr. Klinger has the full weight of his law firm behind him. His firm, Milberg, is one of the largest plaintiffs' class action firms in the United States (and abroad), and has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[2] The firm is involved in some of the largest and well-known class action cases in the country, particularly in the data privacy space. Milberg has at its disposal more than 120 attorneys across the globe from diverse background. Mr. Klinger's and Milberg's firm resume are attached as **Exhibit 2.**

### DAVID S. ALMEIDA OF ALG

53.     David S. Almeida founded ALG, a class action litigation boutique specializing in data privacy and consumer fraud cases. Mr. Almeida's practice focuses on complex class action litigation, primarily litigating privacy cases.

54.     ALG is a nationwide law firm that, since its inception in 2023, has focused not just on litigating complex civil cases, but instead on being leading litigators in each attorney's respective practice area. See ALG Firm Resume, attached hereto **as Exhibit 3**. For instance, Mr. Almeida's current practice area is data privacy protection. In leading this area, he has not only litigated a number of significant data breach class actions but also data privacy class actions brought under the Electronic Communications Privacy Act and patient and consumer privacy Pixel tracking cases.

55.     Mr. Almeida also currently represents clients in consumer privacy actions under the California Medical Information Act ("CMIA"), the Illinois Biometric Information and Privacy

---

[2] *See* https://milberg.com/precedent-setting-decisions/page/3/.

Act ("BIPA"), the Video Privacy Protection Act ("VPPA") and the Telephone Consumer Protection Act ("TCPA").

56. Notably, a significant portion of Mr. Almeida's career has been devoted to serving as a class action defense lawyer, representing hospital systems, medical providers, retail and hospitality companies, and various consumer-facing entities in class action lawsuits related to privacy. Before establishing ALG, Mr. Almeida was a Partner at Benesch, Friedlander, Coplan and Aronoff LLP; while there, he founded and chaired the Class Action Practice Group and lead the Firm's Telephone Consumer Protection Act Team and its Retail, Hospitality and Consumer Products Practice Group.

57. Mr. Almeida's extensive experience spans over 350 class action lawsuits across the country. These cases encompass issues such as data breaches and privacy violations, state consumer fraud and deceptive business practices, false advertising and false labeling, as well as numerous statutory violations.

58. As a recognized authority in the field, Mr. Almeida is well-versed in data privacy and security issues, direct and mobile marketing, emerging payment systems, as well as social and digital media matters. He is an author and speaker on these topics and is sought after by local and national publications for his insights.

59. Mr. Almeida has received multiple listings as an Illinois Super Lawyers and has been acknowledged as a "Rising Star" by the National Law Journal. He earned his Bachelor of Arts from Salisbury University, graduating *summa cum laude*, and obtained his Juris Doctor from Cornell Law School, where he served as an Editor of the Cornell Law Review.

60. Recently, Mr. Almeida was appointed Co-Lead Interim Class Counsel in two data breach class actions: *Tambroni v. WellNow Urgent Care, P.C.*, 1:24-cv-01595 (N.D. Ill., May 24,

2024), and *Gorder v. FCDG Management, LLC d/b/a First Choice Dental*, Case No. 2024CV002164 (Dane County, Wisc. Sept. 12, 2024).

61.    Mr. Almeida was also recently appointed Co-Lead Interim Class Counsel in two data privacy tracking technology cases: *Reedy v. Everylywell, Inc.*, 1:24-cv-02713 (N.D. Ill., April 4, 2024) and *Taylor v. Teladoc Health, Inc.,* 7:24-cv-00664-NSR (S.D.N.Y, January 30, 2024).

62.    ALG has the necessary resources to represent the Settlement Class in this action and has committed and will continue to commit the resources required to bring this matter to conclusion. ALG attorneys and staff are proficient in the use of litigation support technology and the firm has invested in the technological resources needed to litigate complex matters. ALG is fully committed to pursuing the best interests of Plaintiffs and the Settlement Class and will devote all the necessary resources to bring this matter to a successful conclusion.

We declare under penalty of perjury of the law of the United States that the foregoing is true and correct.

Executed on this 7th day of November, 2024, in Chicago, Illinois.

By:        */s/ David S. Almeida*              */s/ Gary M. Klinger*
           David S. Almeida                 Gary M. Klinger

13

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KIRKSTON SPANN II and ROCHELLE LAMPKIN, *on behalf of themselves and all others similarly situated,*<br><br>    Plaintiffs,<br><br>  v.<br><br>SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC.,<br><br>    Defendant. | Case No: 1:24-cv-04704-MFK<br><br>Judge Matthew F. Kennelly |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Kirkston Spann II and Rochelle Lampkin ("Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated, and Defendant Superior Air-Ground Ambulance Service, Inc. ("Defendant" or "Superior Ambulance") (collectively, the "Parties"), hereby enter into this Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement"), subject to Court approval. As detailed below, this Settlement Agreement releases and forever discharges and bars all claims asserted (or claims that could have been asserted) in the class action lawsuit captioned, *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.,* Civil Action No. 1:24-cv-04704-MFK, currently pending in the United States District Court for the Northern District of Illinois and any related actions.

## I.   RECITALS

**WHEREAS**, on June 6, 2024, Plaintiff Kirkston Spann II, on behalf of himself and all others similarly situated, filed a Complaint against Superior Ambulance in the United States District Court for the Northern District of Illinois.

**WHEREAS**, on June 7, 2024, Plaintiff Rochelle Lampkin, on behalf of herself and all others similarly situated, filed a Complaint against Superior Ambulance in the United States District Court for the Northern District of Illinois, Case No. 1:24-cv-04760.

**WHEREAS**, on June 28, 2024, the two cases were consolidated in *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.,* Civil Action No. 1:24-cv-04704-MFK.

**WHEREAS**, on August 7, 2024, Plaintiffs, on behalf of themselves and purportedly a nationwide Class (as defined below), filed a Consolidated Class Action Complaint (the "Operative Complaint") against Superior Ambulance in the United States District Court for the Northern District of Illinois, asserting causes of action for: (1) Negligence, (2) Breach of Implied Contract, (3) Breach of Fiduciary Duty, (4) Violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, *et seq*., (5) Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.,* and (6) Unjust Enrichment;

**WHEREAS,** on September 18, 2024, the Parties engaged in adversarial, arm's length negotiations between competent counsel for all Parties, including an all-day mediation supervised by Bennett G. Picker, a highly-experienced and highly-sought after mediator;

**WHEREAS**, in the Operative Complaint, the Class Representatives sought to certify the following Nationwide Class and Michigan Subclass:

> **Nationwide Class**
> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's

computers systems in May 2023 (the "Nationwide Class").

**<u>Michigan Subclass</u>**
All individuals residing in the State of Michigan whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023 (the "Michigan Subclass").

**WHEREAS**, Defendant denies each and all of the claims and contentions alleged against it in the Operative Complaint. Defendant denies all charges of wrongdoing or liability as alleged, or which could be alleged. Despite this, Defendant has concluded that further litigation would be protracted and expensive, and that it is desirable that this matter be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. The Parties recognized that the outcome of litigation is uncertain, and the Parties agree that it is desirable and beneficial that the Action be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement;

**WHEREAS**, the Parties have explored and discussed at length the factual and legal issues in the Action and engaged in good faith, arm's length negotiations concerning the issues raised by Plaintiffs in the Action, and have agreed to a global, final settlement of the Action that renders the need for further litigation unnecessary;

**WHEREAS**, the Parties desire to compromise and settle all issues, claims, and facts asserted in the Action, or that could have been asserted based upon the facts alleged in the Action, by or on behalf of Class Representatives and the Class;

**WHEREAS**, Class Representatives, by and through Class Counsel, have: (a) made a thorough investigation of the facts and circumstances surrounding the allegations asserted in the Action, (b) engaged in investigation of the claims asserted in the Action, including informal discovery obtained by Class Representatives in connection with the Action and prior to execution

of this Agreement, and (c) evaluated and considered the law applicable to the claims asserted in the Action, including the defenses that Superior Ambulance likely would assert;

**WHEREAS**, Plaintiffs' counsel are experienced in this type of class litigation, recognize the costs and risks of prosecution of this Action, and believe that it is in Class Representatives' interest, and the interest of all Settlement Class Members, to resolve this Action, and any and all claims against Superior Ambulance arising from the conduct alleged in the Action, and in this Settlement Agreement;

**WHEREAS**, significant arm's-length settlement negotiations have taken place between the Parties and, as a result, this Settlement Agreement has been reached without collusion, subject to the Court-approval process set forth herein;

**WHEREAS**, the undersigned Parties believe this Settlement Agreement offers significant benefits to Settlement Class Members and is fair, reasonable, adequate and in the best interest of Settlement Class Members; and

**WHEREAS**, this Settlement Agreement is made and entered into by and between Class Representatives, individually and on behalf of the Class, and Superior Ambulance;

**NOW, THEREFORE**, it is hereby stipulated and agreed, by and between the Parties, as follows:

## II. DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings set forth below. Where appropriate, terms used in the singular shall be deemed to include the plural and vice versa.

1.      "Action" means the case captioned *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.,* Civil Action No. 1:24-cv-04704-MFK, currently pending in the United States District Court for the Northern District of Illinois and any related actions.

2.      "CAFA Notice" means a notice of the proposed Settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. Sec. 1711, *et seq.* ("CAFA"), to be served upon the appropriate State official in each State where Class Member resides and the appropriate federal official. Costs for preparation and issuance of the CAFA Notice will be paid from the Settlement Fund.

3.      "Claim Deadline" means the postmark and/or online submission deadline for claims, which shall be ninety (90) days after the Class Notice Date. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, Postcard Notice, Email Notice, and the Claim Form.

4.      "Claim Form" means the form that will be used by Settlement Class Members to submit a claim under this Agreement, substantially in the form as shown in **Exhibit A** to this Settlement.

5.      "Class Counsel" means Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and David S. Almeida of Almeida Law Group LLC.

6.      "Class Notice" means the direct notice of this proposed settlement, which is to be provided substantially in the manner set forth in this Settlement Agreement and **Exhibits B, C,** and **D** and is consistent with the requirements of Due Process.

7.      "Class Notice Date" means commencement of Class Notice forty-five (45) days after the Court's entry of the Preliminary Approval Order.

8. "Class Representatives" or "Plaintiffs" means Kirkston Spann II and Rochelle Lampkin.

9. "Confirmatory Financial Discovery" means the reasonable documentation provided by Defendant regarding its financial condition in a written declaration seven (7) days after the mediation.

10. "Court" means the United States District Court for the Northern District of Illinois and the Honorable Matthew F. Kennelly or such other judge to whom the Action may hereafter be assigned.

11. "Defendant" means Superior Air-Ground Ambulance Service, Inc.

12. "Defendant's Counsel" or "Superior Ambulance's Counsel" means Casie D. Collignon, Jason A. Orr and Raika N. Casey of Baker & Hostetler LLP.

13. "Effective Date" means the date upon which the Settlement in the Action shall become effective and final, and occurs when the Final Approval Order, as defined in Paragraph 16 below, has been entered and all times to appeal therefrom have expired with: (1) no appeal or other review proceeding having been commenced; or (2) an appeal or other review proceeding having been commenced, and such appeal or other review having been concluded such that it is no longer subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of certiorari, or otherwise, and such appeal or other review has been resolved in a manner that affirms the Final Judgment in all material respects. The Effective Date shall not be altered in the event the Court declines to approve, in whole or in part, Plaintiffs' Counsel's Fees and Expenses or the Service Awards. Further, the Effective Date shall not be altered in the event that an appeal is filed with the sole issue(s) on appeal being Plaintiffs' Counsel's Fees and Expenses and/or the Service Awards.

14. "Email Notice" means the notice of the proposed class action settlement, substantially in the form as shown in **Exhibit B** to this Settlement. The Email Notice will direct recipients to the Settlement Website where individuals may obtain additional details of the proposed Settlement and the Claim Form where Settlement Class Members may make a claim for monetary benefits.

15. "Final Approval Hearing" means the hearing at which the Court will consider and finally decide whether to enter the Final Approval Order and at which the Court will consider Class Counsel's request for payment of any Service Awards and Plaintiffs' Counsel's Fees and Expenses. The hearing may be held remotely, and if so, instructions will be posted on the Settlement Website.

16. "Final Approval Order" means the Final Approval Order and separate Judgment of the Court approving this Settlement Agreement and making such other final rulings as are contemplated by this Settlement Agreement. Class Counsel shall move the Court for a Final Approval Order of this Settlement fourteen (14) days prior to the date of the Final Approval Hearing. Contemporaneously with seeking Final Approval of the Settlement, Parties' Counsel shall cause to be filed with the Court a declaration from the Settlement Administrator with respect to the Notice program and the Claims process.

17. "Long Form Notice" means the Court-approved long-form notice of settlement to be posted on the Settlement Website, substantially in the form as shown in **Exhibit C** to this Settlement, informing the Class of, among other things: (i) the preliminary approval of the Settlement, (ii) the scheduling of the Final Approval Hearing, (iii) the Settlement benefits available to Settlement Class Members, and (iv) their opportunity to participate in, object to or exclude themselves from the Settlement.

18. "Objection Date" means the date by which members of the Settlement Class may file with the Court through the Court's electronic case filing ("ECF") system and mail to Class Counsel and Defendant's Counsel their objection to the settlement. The postmark date shall constitute evidence of the date of mailing for these purposes. The Objection Date shall be sixty (60) days from the Class Notice Date.

19. "Parties" means Plaintiffs and Defendant.

20. "Plaintiffs' Counsel's Fees" or "Attorneys' Fees" means an amount not to exceed one third of the Settlement Fund, or one-million eighty-three thousand three-hundred thirty-three dollars and 33 cents ($1,083,333.33), for attorneys' fees, to be paid from the Settlement Fund, subject to approval of the Court. Class Counsel may also seek reimbursement of their reasonable out-of-pocket litigation costs and expenses, in addition to the Attorneys' Fees.

21. "Postcard Notice" (also known as the "Short Form Notice") means the notice of the proposed class action settlement, substantially in the form as shown in **Exhibit D** to this Settlement. The Postcard Notice will direct recipients to the Settlement Website where individuals may obtain additional details of the proposed Settlement and the Claim Form where Settlement Class Members may make a claim for monetary benefits.

22. "Preliminary Approval Order" means the order of the Court preliminarily approving this Settlement Agreement, substantially in the form as shown in **Exhibit E** to this Settlement.

23. "Personal Information" means Class Members' names, addresses, dates of birth, Social Security numbers, driver's license or state identification numbers, financial account information, payment card information, patient record information, medical diagnosis or condition information, medical treatment information, and health insurance information.

24. "Released Claims" means the claims released by this Settlement Agreement, as set forth in Section IV.

25. "Released Parties" means Defendant's past, present, and future parents, subsidiaries, divisions, customers, partnerships, joint ventures, affiliates, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, principals, agents, attorneys, assigns, employees, servants, members, providers, partners, principals, officers, directors, shareholders, owners, heirs, executors, administrators, personal representatives, insurers, and reinsurers, and trustees of such entities, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Action, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge. Released Parties specifically includes Paramedic Billing Services, Inc., and all data owners and business associates who had data impacted in the data breach that is the subject of the Operative Complaint.

26. "Request for Exclusion" means a timely and valid request by any Settlement Class Member for exclusion from the Settlement.

27. "Request for Exclusion Deadline" or "Opt-Out Deadline" means the date by which members of the Settlement Class must mail to the Settlement Administrator their request to be excluded from the Settlement Class for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Request for Exclusion Deadline shall be sixty (60) days from the Class Notice Date.

28. "Security Incident" means the May 2023 incident in which an unauthorized third party accessed certain files on Superior Ambulance's network.

Page **9** of **33**

29. "Service Awards" means the amount to be paid to the Class Representatives to compensate them for the time and effort spent pursuing the Action on behalf of the Settlement Class, subject to approval of the Court, and which shall not exceed an amount of two thousand five hundred dollars ($2,500.00) to each Class Representative. The Service Awards shall be paid from the Settlement Fund.

30. "Settlement" and "Settlement Agreement" means the agreement by the Parties to resolve this Action, the terms of which have been memorialized herein.

31. "Settlement Administration" means the processing of payments to Settlement Class Members by the Settlement Administrator.

32. "Settlement Administrator" means, subject to Court approval, Epiq, a company experienced in administering class action claims generally and specifically those of the type provided for in this Action.

33. "Settlement Class" means the approximately 995,000 individuals residing in the United States whose Private Information may have been accessed and/or acquired by an unauthorized third party as a result of the Security Incident that occurred within Defendant's computers systems in May 2023. Excluded from the Settlement Class are the following individuals and/or entities: (1) Superior Air-Ground Ambulance Service, Inc. and its parents, subsidiaries, officers, and directors, and any entity in which Defendant has a controlling interest; (2) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (3) the Judge assigned to this litigation as well as their immediate family and staff; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge.

34. "Settlement Class Member" means a Person who falls within the definition of the Settlement Class.

35. "Settlement Fund" means a non-reversionary common fund to be funded by Defendant in the amount of $3,250,000.00, which shall be deposited into an Escrow Account to be set up by the Settlement Administrator.

36. "Settlement Website" means the website to be established by the Settlement Administrator that will inform members of the Settlement Class of the terms of this Settlement Agreement, their rights, dates and deadlines and related information, and shall include in .pdf format and available for download the following: (1) the Class Notice, (2) the Claim Form, (3) the Preliminary Approval Order, (4) this Settlement Agreement, (5) the Operative Complaint, and (6) any other materials agreed upon by the Parties and/or required by the Court. The Settlement Website shall provide the members of the Settlement Class with the ability to complete and submit the Claim Form electronically. The Settlement Website shall be deactivated one-hundred eighty (180) days after the Effective Date.

37. "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including Plaintiffs, does not know or suspect to exist in his or her favor at the time of the release of the Released Parties that, if known by him or her, might have affected his or her settlement with, and release of, the Released Parties, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Plaintiffs and each of the other Settlement Class Members intend to and expressly shall have waived the provisions, rights and benefits conferred to Settlement Class Members, including Plaintiffs. Plaintiffs and each of the other Settlement Class Members may hereafter discover facts in addition to, or different from,

those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Plaintiffs and each other Settlement Class Member shall be deemed to have upon the Effective Date, fully, finally and forever settled and released any and all Released Claims, including Unknown Claims. The Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

38. "Valid Claims" means claims in an amount approved by the Settlement Administrator or found to be valid through the claims processing.

### III. REQUIRED EVENTS

39. Class Counsel and Defendant's Counsel shall take all reasonable and necessary steps to obtain entry of the Preliminary Approval Order and obtain entry of the Final Approval Order. Class Counsel shall prepare and file all documents in connection with the Motion for Preliminary Approval and the Motion for Final Approval.

40. In the event that the Court fails to issue the Preliminary Approval Order or fails to issue the Final Approval Order, the Parties agree to use their best efforts, consistent with this Settlement Agreement, to cure any defect(s) identified by the Court.

41. The Parties acknowledge that prompt approval, consummation, and implementation of the Settlement as set forth in this Agreement is essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions contemplated here.

## IV.     SETTLEMENT TERMS

42.     Settlement Fund: Superior Ambulance shall make a non-reversionary payment of $3,250,000.00, and deposit that payment into the Settlement Fund via an Escrow Account to be opened by the Settlement Administrator.

43.     No later than thirty (30) days after entry of the Preliminary Approval Order, and upon the receipt of sufficient payment information from the Settlement Administrator including, wiring instructions and a properly completed and duly executed IRS Form W-9, along with any other necessary forms, Defendant will advance to the Settlement Administrator the cost of preparing and transmitting the Postcard Notice or Email Notice (as available) to Settlement Class Members. Defendant shall deposit the balance of the Settlement Fund within thirty (30) days of the Court's entry of the Final Approval Order. The Settlement Administrator shall establish a Qualified Settlement Fund (QSF), as defined by 26 C.F.R. 1.468B-1, for the deposit of the payment of the balance of the Settlement Fund. Under no circumstances will Defendant have any further monetary payment obligation other than the payment of the Settlement Fund.

44.     Payments from Settlement Fund: The costs of Settlement Administration, including notice and distributions to members of the Settlement Class, the costs of administrating the Settlement Fund, and reasonable fees of the Settlement Administrator, Plaintiffs' Counsel's Fees and Expenses, and Service Awards shall be paid exclusively from the Settlement Fund. There will be no reversion of the Settlement Fund to Superior Ambulance.

45.     Injunctive Relief. Defendant agrees to the following injunctive relief:

a.   Within the next 24 months, Defendant will spend up to $2,500,000.00 but not less than $1,500,000.00 on information security enhancements, which was confirmed in a written declaration delivered within seven (7) days of the mediation;

b. Defendant has represented that it has already spent $2,084,399.08 in security enhancements since the Data Incident to date. Defendant has confirmed this amount in a written declaration delivered within seven (7) days of the mediation.

46. <u>Service Awards to the Class Representatives:</u> Class Counsel will move the Court for Service Award payments from the Settlement Fund for the Class Representatives in an amount not to exceed two thousand five hundred dollars ($2,500.00) for each Class Representative, in recognition of their assistance and time spent in this Action and the risks taken by them as the Class Representatives in commencing the Action, both financial and otherwise. Defendant agrees not to oppose Class Counsel's request for Service Award payments from the Settlement Fund in these amounts. If awarded by the Court, the Settlement Administrator shall pay from the Settlement Fund the Service Awards to the Class Representatives in the manner directed by Class Counsel within ten (10) days after the Effective Date.

47. <u>Payment of Plaintiffs' Counsel's Fees and Expenses:</u> No later than fourteen (14) days prior to the Objection Date and Request for Exclusion Deadline, Class Counsel will move the Court for an award of Plaintiffs' Counsel's attorneys' fees to be paid from the Settlement Fund in an amount not to exceed one third of the Settlement Fund, ($1,083,333.33), plus reasonable litigation costs and expenses. Class Counsel, in their sole discretion, shall allocate and distribute any amounts of attorneys' fees, costs and expenses awarded by the Court among Plaintiffs' counsel. If awarded by the Court, the Settlement Administrator shall pay from the Settlement Fund any Plaintiffs' Counsel's Fees and Expenses in the amounts awarded by the Court within ten (10) days after the Effective Date. Within five (5) days of the Effective Date, Class Counsel will provide the Settlement Administrator with payment instructions.

48.     Payment of Valid Claims to Class Members: Each member of the Settlement Class who submits a timely and valid Claim Form shall be paid from the Settlement Fund in the manner outlined in the Settlement Administration section below. As set forth below, the Settlement Fund will be used to pay for: (1) reimbursement for Documented Out-of-Pocket Losses, (2) Pro Rata Cash Payments, and (3) credit monitoring. Valid Claims for Documented Out-of-Pocket Losses will be paid first. Valid Claims for Pro Rata Cash Payments be paid last and will be increased or decreased pro rata to consume the remaining amount of the Settlement Fund after payment for notice and Settlement Administration costs, Service Awards as approved by the Court, and Plaintiffs' Counsel's Fees and Expenses as awarded by the Court.

49.     CAFA Notice: Within ten (10) days of the filing of the Motion for Preliminary Approval, Superior Ambulance shall cause notice to be provided to state Attorneys General or others as required by 28 U.S.C. § 1715(b).

## II.     CLAIMS PROCESS

49.     Members of the Settlement Class must submit a Claim Form to receive a distribution payment from the Settlement Fund. Each Settlement Class Member is limited to the submission of one Claim Form and in no event shall a Settlement Class Member receive more than one distribution of Settlement benefits. The Settlement Administrator will only issue Settlement distributions to Settlement Class Members who submit timely and valid Claim Forms. To be entitled to receive a distribution under this Agreement, Settlement Class Members must properly complete a Claim Form and timely deliver it to the Settlement Administrator within ninety (90) days from the Class Notice Date. Any Class Member who fails to submit a valid and timely Claim Form will not receive any payment under this Agreement.

50. All Settlement Class Members may submit requests for Settlement benefits as set forth below:

**A.      Reimbursement for Documented Out-of-Pocket Losses**

     i.    All Settlement Class Members may submit a claim for Documented Out-of-Pocket Losses up to five thousand dollars ($5,000.00) per individual.

    ii.    "Documented Out-of-Pocket Losses" means the unreimbursed costs or expenditures incurred by a Settlement Class Member between May 15, 2023 and the Claims Deadline, as a result of the Security Incident. Documented Out-of-Pocket Losses may include, but are not limited to, unreimbursed costs, expenses or charges incurred addressing or remedying identity theft, fraud or misuse of Personal Information and/or other issues reasonably traceable to the Security Incident.

   iii.    Settlement Class Members who elect to submit a claim for reimbursement of Documented Out-of-Pocket Losses must provide to the Settlement Administrator the information required to evaluate the claim, including: (1) the Settlement Class Member's name and current address, (2) a brief description of the claimed out-of-pocket expenses, and (3) documentation supporting their claimed losses. Documentation supporting the claimed losses can include receipts or other documentation supporting the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

iv.    Settlement Class Members seeking reimbursement for Documented Out-of-Pocket Losses must complete and submit either a written or online Claim Form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. The Claim Form must be verified by the Settlement Class Member with an attestation that the claimant believes that the losses or expenses claimed were incurred as a result of the Security Incident.

**B.    Pro Rata Cash Payments**

i.    Settlement Class Members may also claim a Pro Rata Cash Payment by submitting a timely and valid Claim Form. The amount of the Pro Rata Cash Payment shall be increased or decreased on a pro rata basis, based on the funds remaining in the Settlement Fund following the payment of Plaintiffs' Counsel's Fees and Expenses, any Service Awards, the Costs of Settlement Administration, CAFA Notice, claims for Documented Out-of-Pocket Losses, and the cost of identity theft protection and credit monitoring.

**C.    Identity Theft Protection and Credit Monitoring**

i.    Settlement Class Members may submit a claim for two (2) years of three-bureau credit monitoring, with at least $1 million in fraud insurance.

51.    The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with weekly reports informing them of all Claim Forms received by the Settlement Administrator during each week following the Class Notice Date. No later than sixteen (16) days prior to the Final Approval Hearing, the Settlement Administrator must provide counsel with a Declaration reporting on the mailing of the Class Notice and identifying the number of Claim

Forms, Requests for Exclusion and objections received, which shall be filed with the motion for final approval.

52.     Disbursement of Settlement Payments and Checks: Within thirty (30) days after the Effective Date, the Settlement Administrator will disburse payments for Valid Claims to each Settlement Class Member who submits a timely and valid Claim Form. Payments may be made by electronic payment or by paper check. In the event that the aggregated amount of payment of all Valid Claims exceeds the total amount of the Settlement Fund ($3,250,000.00), the value of the Settlement payments to each Settlement Class Member who submitted a Valid Claim shall be reduced on a pro rata basis, such that the aggregate value of all payments for all Valid Claims does not exceed the Settlement Fund (after payment of all Settlement Administration costs, Service Awards, and Plaintiffs' Counsel's Fees and Expenses). All pro rata reduction determinations shall be made by the Settlement Administrator.

53.     Failure to Cash Settlement Checks: Any Settlement check not cashed within one-hundred-twenty (120) days of issuance (based on the date of the check) will be deemed expired. Any member of the Settlement Class who does not cash their Settlement check within the aforementioned time period may petition the Settlement Administrator within thirty (30) days of the expiration of their uncashed check to reissue their Settlement check and, good cause providing, the Settlement Administrator will issue a new check. Members of the Settlement Class are entitled to only one petition on this basis, and any Settlement check reissued for such reasonable circumstances will expire within thirty (30) days of reissuance (based on the date of the check). Settlement Class Members who do not timely cash their Settlement checks and who fail to petition for a reissuance of the uncashed Settlement check will be considered as having waived any right to a cash payment under the Settlement Agreement. In no event will a Settlement Class Member

be permitted to cash a check once the value of uncashed checks has been paid to a *cy pres* organization, as agreed to by the Parties and approved by the Court.

54.     Payment of Uncashed Checks to a *Cy Pres* Organization: The total amount of uncashed Settlement checks will be paid to a charitable organization to be agreed upon by Defendant and Class Counsel and approved by the Court.

### III.     SETTLEMENT ADMINISTRATION

55.     Engagement of Settlement Administrator: Upon entry of the Preliminary Approval Order, the Parties shall engage Epiq as the Settlement Administrator. Epiq shall be paid reasonable Settlement Administration costs exclusively from the Settlement Fund. Epiq shall be required to execute a business associate agreement, acceptable to Superior Ambulance.

56.     Settlement Class Member Information: No later than ten (10) days after entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the name and last known physical address of each Settlement Class Member that Defendant possesses. For any Settlement Class Member whose information does not include a valid address, the Settlement Administrator shall use the available information to conduct a reverse look-up search to obtain a physical address to mail the Notice. The Settlement Administrator shall also perform, or engage a third-party to perform, "reverse lookups" for Email addresses associated with Settlement Class Members provided in the Class List without a valid email address. The Settlement Class Member information and its contents shall be used by the Settlement Administrator solely for the purpose of performing its obligations pursuant to this Settlement Agreement and shall not be used for any other purpose at any time. Except to administer the settlement as provided in this Settlement Agreement the Settlement Administrator shall not reproduce, copy, store, or distribute in any form, electronic or otherwise, the Settlement Class Member Information.

57.     <u>Duties of Settlement Administrator:</u> In addition to other duties as set forth in this Agreement, the Settlement Administrator shall be responsible for the following:

a)     Preparing, printing, and disseminating the Postcard Notice to Settlement Class Members;

b)     Within forty-five (45) days after the entry of the Preliminary Approval Order (the Class Notice Date), sending by First Class Mail the Postcard Notice or an Email Notice (to those Settlement Class Members for whom a good email address is available) to all Settlement Class Members. Before any mailing under this paragraph occurs, the Settlement Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS. In the event that a Postcard Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Settlement Administrator shall re-send the Postcard Notice to the forwarding address within ten (10) days of receiving the returned Postcard Notice. In the event that subsequent to the first mailing of a Postcard Notice, and at least fourteen (14) days prior to the Objection Date and Request for Exclusion Deadline, a Postcard Notice is returned to the Settlement Administrator by the USPS because the address of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Settlement Administrator shall perform a standard skip trace, in the manner that the Settlement Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Postcard

Notice within seven (7) days of receiving such information. This shall be the final requirement for mailing;

c)     Sending reminder email notices to those Settlement Class Members whose initial notice was sent by email, as directed by Class Counsel;

d)     Maintaining the Settlement Website and toll-free number with recorded answers for one-hundred eighty (180) days following the Effective Date.

e)     Keeping track of Requests for Exclusion, including maintaining the original mailing envelope in which each request was mailed;

f)     Keeping track of Claim Forms, including maintaining the original mailing envelope in which each form was mailed;

g)     Keeping track of objections, including maintaining the original mailing envelope in which each objection was mailed;

h)     Keeping track of all other communications from Settlement Class Members, including maintaining the original mailing envelope in which any communication was mailed;

i)     Maintaining adequate records of its activities, including the dates of each mailing of the Postcard Notices, returned mail and other communications, and attempted written or electronic communications with Settlement Class Members;

j)     Promptly furnishing to counsel for the Parties: (i) copies of any Requests for Exclusion, (ii) copies of any objections, and (iii) all other written or electronic communications received from Settlement Class Members;

k) Determining whether Requests for Exclusion comply with the terms of this Agreement and are timely and valid and effective to exclude the submitting Settlement Class Member from the Class;

l) Determining whether Claim Forms comply with the terms of this Agreement and are timely and valid;

m) Promptly preparing and distributing any rejection of a Request for Exclusion to the submitting Settlement Class Member. Rejections shall set forth the reasons for rejection, including the reason(s) the Request for Exclusion fails to comply with the terms of this Agreement;

n) Promptly preparing and distributing notices of deficiencies to the submitting Settlement Class Member that set forth the reasons their Claim Form is deficient, including the reason(s) the Claim Form fails to comply with the terms of this Agreement;

o) Delivering to the Parties' counsel in a reasonably timely manner, but in no event later than sixteen (16) days before the Final Approval Hearing, a written report concerning all Requests for Exclusion (valid and invalid), all Claim Forms (valid and deficient), and all objections (valid and invalid);

p) Establishing a QSF for the deposit of the Settlement Fund payment, ensuring that all taxes associated with the administration of the Settlement Fund are timely paid to the appropriate tax authorities and all tax filings are timely filed, which taxes shall be paid from the Settlement Fund;

q) Determining the payment to each member of the Settlement Class who submits a Valid Claim in accordance with this Agreement;

r)      No later than thirty (30) days after the Effective Date, distributing payments to each Settlement Class Member who submitted a Valid Claim sending an electronic payment or check by First Class Mail to each Settlement Class Member in the amount of his or her approved claim;

s)      No later than ten (10) days after the Effective Date, distributing any Service Awards approved by the Court in the amount of the award approved by the Court as set forth above;

t)      No later than ten (10) days after the Effective Date, preparing and distributing, in accordance with this Agreement and the Final Approval Order, Plaintiffs' Counsel's Fees and Expenses; and

u)      Confirming in writing its completion of the administration of the Settlement.

v)      <u>Costs of Settlement Administration:</u> All reasonable expenses incurred in administering this Settlement, including, without limitation, the cost of the Postcard Notice, Settlement Website, and toll-free telephone line, the cost of distributing and administering the Settlement benefits, and the Settlement Administrator's reasonable costs shall be paid to the Settlement Administrator from the Settlement Fund, subject to the approval of the Court.

## IV.    <u>REQUESTS FOR EXCLUSION BY CLASS MEMBERS</u>

58.     Any Settlement Class Member may make a Request for Exclusion by mailing such request in writing to the Settlement Administrator at the address set forth in the Class Notice. Any Request for Exclusion must be postmarked no later than sixty (60) days after the Class Notice Date. The Request for Exclusion shall: (i) state the Settlement Class Member's full name, current

address, and signature, and (ii) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class. Failure to comply with these requirements and to timely submit the Request for Exclusion will result in the Settlement Class Member being bound by the terms of the Settlement.

59. Any Settlement Class Member who submits a timely Request for Exclusion may not make any objections to the Settlement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

60. The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a weekly report informing them of any Requests for Exclusion received by the Settlement Administrator during each week following the Class Notice Date. The Settlement Administrator must provide Class Counsel and Defendant's Counsel with a declaration identifying all Settlement Class Members who requested exclusion from the Settlement and indicating those requests that were untimely no later than sixteen (16) days prior to the Final Approval Hearing. Class Counsel will file with the Court and serve Defendant with the declaration along with their Motion for Final Approval.

61. No party will solicit or encourage Requests for Exclusion. Any attempt to do so by Plaintiffs or Defendant will be deemed a breach of this Settlement Agreement.

62. "Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class Members or multiple Settlement Class Members where an opt out has not been signed by each and every individual Settlement Class Member will not be allowed.

63. In the event that more than 50 Settlement Class Members exercise their right to exclude themselves from the Settlement Class, Defendant shall have the option to terminate this Agreement. Defendant shall notify Class Counsel and the Court of its intention to terminate this

Agreement pursuant to this paragraph within 10 days after the last day on which Settlement Class Members may submit a Request for Exclusion, or the option to terminate shall be considered waived.

## V.     OBJECTION TO SETTLEMENT BY CLASS MEMBERS

63.     Any Settlement Class Member may make an objection to the proposed Settlement by mailing a letter to the Settlement Administrator at the address set forth in the Class Notice. Any objection to be considered valid must be mailed and postmarked no later than the Objection Date, i.e., sixty (60) days from the Class Notice Date. Class Counsel must file all objections with the Court, with service to all Parties' counsel not later than fourteen (14) days after the Objection Deadline. Any Settlement Class Member who has submitted a Request for Exclusion may not submit any objections or speak at the Final Approval Hearing.

64.     To state a valid objection to the Settlement, an objecting Settlement Class Member must mail a letter to the Settlement Administrator setting forth all of the following information in writing: (i) the objector's full name, current address, current telephone number, and be personally signed, (ii) the case name and case number, *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.,* Civil Action No. 1:24-cv-04704-MFK, (iii) documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice or Email Notice he or she received, (iv) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s), (v) copies of any other documents that the objector wishes to submit in support of his/her position, (vi) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and (vii) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of his/her counsel.

65.     Subject to approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court. By this provision, the Parties are not waiving and are expressly preserving their right to contest any appearance by an objector on any grounds, or from asserting any and all other potential defenses and privileges to any such appearance.

66.     The agreed-upon procedures and requirements for submitting objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Member's objection to the Settlement Agreement, in accordance with the due process rights of all Settlement Class Members. The Preliminary Approval Order and Class Notice will require all Settlement Class Members who have any objections to submit the objections to the Settlement Administrator at the address set forth in the Postcard Notice, by no later than the Objection Date.

67.     Class Counsel will defend the Court's Final Approval Order and any related orders in the event of an appeal.

## VI.     <u>RELEASE OF CLAIMS</u>

68.     Plaintiffs and Settlement Class Members who fail to timely make a valid Request for Exclusion from the Settlement fully and finally release Defendant and the other Released Parties from any and all past, present, and future claims and causes of action related to the Security Incident, including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. § 45, *et seq.*, and all similar statutes in effect in any states in the United States as defined below; state consumer-protection statutes; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of third-party

beneficiary contract; breach of fiduciary duty; breach of confidence; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief or judgment, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Parties based on, relating to, concerning or arising out of the alleged Security Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Action. Released Claims shall not include the right of any Settlement Class Member or any of the Released Parties to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of any Person who has timely excluded themselves from the Class.

69.     Upon the Effective Date, Defendant shall be deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, each and all of the Settlement Class Members, and Plaintiffs' Counsel of all claims based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Action or the Released Claims, except for enforcement of the Settlement Agreement and except as to Settlement Class Members who submit a timely and valid Request for Exclusion from the Settlement.

70.     This Settlement Agreement does not affect the rights of Settlement Class Members who submit a timely and valid Request for Exclusion from the Settlement.

71.     Upon issuance of the Final Approval Order: (i) the Settlement Agreement shall be the exclusive remedy for any and all Settlement Class Members, except those who have opted out in accordance with the provisions hereof, (ii) Defendant and the other Released Parties shall not be subject to liability or expense of any kind to any Settlement Class Member(s) for reasons related to the Action except as set forth herein, and (iii) Settlement Class Members shall be permanently barred from initiating, asserting or prosecuting any and all Released Claims against Defendant and the other Released Parties.

## VII.     REPRESENTATIONS, WARRANTIES, AND COVENANTS

72.     Class Counsel represents and warrants that they have the authority, on behalf of Plaintiffs, to execute, deliver and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby. This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiffs and constitutes their legal, valid and binding obligation.

73.     Superior Ambulance, through its undersigned attorneys, represents and warrants that it has the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby. The execution, delivery and performance by Superior Ambulance of this Settlement Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by Superior Ambulance. This Settlement Agreement has been duly and validly executed and delivered by Superior Ambulance and constitutes its legal, valid and binding obligation.

## VIII.   MISCELLANEOUS PROVISIONS

74.     The Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.

75.     This Settlement Agreement is not to be used in evidence (except in connection with obtaining approval of this Settlement Agreement and enforcing its terms) and shall not at any time be construed or deemed to be any admission or concession by Defendant with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein. Defendant specifically denies all of the allegations made in connection with the Action. Neither this Settlement Agreement nor any class certification pursuant to it shall constitute, in this or in any other proceeding, an admission by Defendant or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement. This Settlement Agreement also is made with the Parties' express understanding and agreement that if for any reason this Settlement is not approved by the Court, Defendant may continue to contest and deny that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction.

76.     This Settlement Agreement is entered into only for purposes of settlement. In the event that the Final Approval Order is not entered, or a Final Approval Order is subsequently reversed on appeal, the Parties agree to use their best efforts to cure any defect(s) identified by the Court. If, despite their best efforts, the Parties cannot cure said defects, this Settlement Agreement, including any releases or dismissals hereunder, is canceled, and no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation,

documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever in the Action, and all Parties shall be restored to their prior rights and positions as if the Settlement Agreement had not been entered into.

77.     The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

78.     This Settlement Agreement may not be modified or amended except in writing and signed by all of the Parties.

79.     This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

80.     Except as otherwise provided in this Settlement Agreement, each Party shall bear their own costs of the Action.

81.     The Parties reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that might be necessary to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in any of the Settlement papers.

82.     The administration and consummation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, the release. The Final Approval Order will provide that the Court expressly retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the

terms and provisions of this Settlement Agreement, including, but not limited to, orders enjoining Class Members from prosecuting claims that are released pursuant to this Settlement Agreement as provided herein, and allowing for discovery related to objectors, if any.

83. The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation with consideration by and participation of all Parties and their counsel. Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

84. This Settlement Agreement constitutes the entire, fully integrated agreement among the Parties and cancels and supersedes all prior written and unwritten agreements and understandings pertaining to the Settlement of the Action.

85. The Parties agree that any unresolved disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, and/or as to any disagreement regarding the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, shall be submitted to the Court for resolution.

86. All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, or default, from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be

included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. Each of the Parties reserves the right, subject to the Court's approval, to seek any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement, and to modify or supplement any notice contemplated hereunder.

87.     Any failure by any of the Parties to insist upon the strict performance by any of the other Parties of any of the provisions of this Agreement shall not be deemed a waiver of any provision of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions herein.

88.     All notices to the Parties or counsel required by this Settlement Agreement shall be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

For Class Counsel:

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: (866) 252-0878
E-Mail: gklinger@milberg.com

For Superior Ambulance:

Casie D. Collignon
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Phone: 303.861.0600
E-Mail: ccollignon@bakerlaw.com

**[SIGNATURES ON FOLLOWING PAGES]**

Page **32** of **33**

IN WITNESS WHEREOF, Plaintiffs and Defendant, by and through their respective counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Class Counsel

Counsel for Superior Air-Ground
Ambulance Service, Inc.
Duly Authorized Signatory

DATED this __ day of November, 2024

DATED this __ day of November, 2024

By: /s/ *Gary M. Klinger*

By: /s/_____

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: (866) 252-0878
E-Mail: gklinger@milberg.com

Casie D. Collignon
Jason A. Orr
Raika N. Casey
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Phone: (303) 861-0600
E-mail: ccollignon@bakerlaw.com
          jorr@bakerlaw.com
          rcasey@bakerlaw.com

By: /s/_____

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Phone: (312) 576-3024
E-Mail: david@almeidalawgroup.com

By: /s/_____
Kirkston Spann, II
Plaintiff

By: /s/_____
Rochelle Lampkin
Plaintiff

Page **33** of **33**

IN WITNESS WHEREOF, Plaintiffs and Defendant, by and through their respective counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Class Counsel

DATED this __ day of November, 2024

By: /s/ *Gary M. Klinger*

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: (866) 252-0878
E-Mail: gklinger@milberg.com

By: /s/ _____

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Phone: (312) 576-3024
E-Mail: david@almeidalawgroup.com

By: /s/ _____
Kirkston Spann (Nov 5, 2024 20:36 CST)
Kirkston Spann, II
Plaintiff

By: /s/ _____
Rochelle Lampkin
Plaintiff

Counsel for Superior Air-Ground Ambulance Service, Inc.
Duly Authorized Signatory

DATED this __ day of November, 2024

By: /s/ _____

Casie D. Collignon
Jason A. Orr
Raika N. Casey
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Phone: (303) 861-0600
E-mail: ccollignon@bakerlaw.com
jorr@bakerlaw.com
rcasey@bakerlaw.com

Page **33** of **33**

IN WITNESS WHEREOF, Plaintiffs and Defendant, by and through their respective counsel, have executed this Settlement Agreement as of the date(s) indicated on the lines below.

Class Counsel

Counsel for Superior Air-Ground
Ambulance Service, Inc.
Duly Authorized Signatory

DATED this ___ day of November, 2024

DATED this ___ day of November, 2024

By: /s/ *Gary M. Klinger*

By: /s/

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Phone: (866) 252-0878
E-Mail: gklinger@milberg.com

Casie D. Collignon
Jason A. Orr
Raika N. Casey
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Phone: (303) 861-0600
E-mail: ccollignon@bakerlaw.com
jorr@bakerlaw.com
rcasey@bakerlaw.com

By: /s/ _____

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
Phone: (312) 576-3024
E-Mail: david@almeidalawgroup.com

By: /s/ _____
Kirkston Spann, II
Plaintiff

By: /s/ _____
Michelle Lampkin
Plaintiff

Page **33** of **33**

# EXHIBIT A

**Must be postmarked or submitted online NO LATER THAN [deadline]**

SUPERIOR AMBULANCE SETTLEMENT
ADMINISTRATOR
P.O. BOX **XXXX**
PORTLAND, OR XXXXX-XXXX
www. XXXXXXXXXXXXXX.com

| *Spann et al. v. Superior Air-Ground Ambulance Service* Claim Form |
|---|

## SETTLEMENT BENEFITS – WHAT YOU MAY GET

You may submit a claim form if you are an individual residing in the United States whose Private Information may have been accessed and/or acquired by an unauthorized third party as a result of the Security Incident that occurred within Defendant's network in May 2023.

**The easiest way to submit a claim is online at www.XXXXXXXXXX.com**, or you can complete and mail this claim form to the mailing address above.

**You may submit a claim for one or more of these benefits:**

**(1) Pro Rata Cash Payment:**

You may elect to receive a Pro Rata Cash Payment. For purposes of calculating the Pro Rata Cash Payment, the Settlement Administrator must distribute the funds in the Settlement for the payment of Plaintiffs' Counsel's Fees and Expenses, Service Awards, settlement administration costs, Valid Claims for Documented Out-of-Pocket Losses, and credit monitoring expenses. The amount of the Pro Rata Cash Payment may be increased or decreased on a pro rata basis, based on the funds remaining in the Settlement Fund after these payments.

**(2) Reimbursement for Documented Out-of-Pocket Losses:**

All Settlement Class Members who timely submit a Valid Claim are eligible for up to a total of $5,000.00 per person for unreimbursed documented costs or expenses incurred by a Settlement Class Member between May 15, 2023, and the Claims Deadline as a result of the Security Incident.

You must submit documentation supporting your Claim Form for Documented Out-of-Pocket Losses, which may include but is not limited to, unreimbursed costs, expenses or charges incurred addressing or remedying identity theft, fraud or misuse of Personal Information and/or other issues reasonably traceable to the Security Incident.

Documentation supporting your losses can include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

**(3) Identity Theft Protection and Credit Monitoring:**

In addition to selecting a Pro Rata Cash Payment and/or compensation for Documented Out-of-Pocket Losses, you may elect to receive two (2) years of free three-bureau credit monitoring.

**(4) Business Practice Changes:**

Although Defendant denies any wrongdoing or liability, Plaintiffs have received assurances that the Defendant is continuously implementing additional security enhancements including defensive tools and increased monitoring.

**Claims must be submitted online or mailed by [deadline]. Use the address at the top of this form to mail your Claim Form.**

*Please note: the settlement administrator may contact you to request additional documents to process your claim. Your* **[benefit language]** *may decrease depending on the number of claims filed.*

For more information and complete instructions visit **[website].**

**Please note that Settlement benefits will be distributed after the Settlement is approved by the Court and becomes final.**

## Your Information

**1. NAME (REQUIRED):**

First Name                                                    MI    Last Name

**2. MAILING ADDRESS (REQUIRED):**

Street Address

Apt. No.

City                                                          State    ZIP Code

**3. PHONE NUMBER:**

**4. EMAIL ADDRESS:**

**5. UNIQUE ID:**

## Pro Rata Cash Payment:

Payments may be made by electronic payment or by paper check. In the event that the total amount of Valid Claims exceeds the total amount of the Settlement Fund ($3,250,000.00), the value of the Pro Rata Cash Payments to each Settlement Class Member who submitted a Valid Claim will be reduced on a pro rata basis (a legal term meaning equal share), so that the total value of the Pro Rata Cash Payments for all Valid Claims does not exceed the Settlement Fund (after payment of all Settlement Administration costs, Service Awards, and Plaintiffs' Counsel's Fees and Expenses).

☐ **I wish to receive a Pro Rata Cash Payment.**

| Reimbursement for Documented Out-of-Pocket Losses: |
| --- |

You can receive reimbursement for up to a total $5,000.00 per person for unreimbursed costs or expenses incurred by a Settlement Class Member between May 15, 2023, and the Claims Deadline as a result of the Security Incident.

You must submit documentation supporting your Claim Form for Documented Out-of-Pocket Losses, which may include but is not limited to, unreimbursed costs, expenses or charges incurred addressing or remedying identity theft, fraud or misuse of Personal Information and/or other issues reasonably traceable to the Security Incident.

Documentation supporting your losses can include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity to or support other submitted documentation.

| Expense Type and Examples of Documents | Approximate Amount of Expense and Date | Description of Expense or Money Spent and Supporting Documents (Identify what you are attaching, and why it's related to the Security Incident) |
| --- | --- | --- |
| Professional fees incurred to address identity theft or fraud, such as falsified tax returns, account fraud, and/or medical-identity theft. | | _____<br><br>_____<br><br>_____ |
| Other losses or costs resulting from identity theft or fraud (provide detailed description) *Please provide a detailed description or a separate document submitted with this Claim Form.* | | _____<br><br>_____<br><br>_____ |
| Professional fees including attorneys' and accountants' fees, and fees for credit repair services. | | _____<br><br>_____ |

4870-6595-3011.1 **Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

☐ **I attest that the losses or expenses claimed were incurred as a result of the Security Incident.**

## Identity Theft Protection and Credit Monitoring:

You may choose to elect to receive two (2) years of free three-bureau credit monitoring.

☐ I wish to receive two (2) years of free three-bureau credit monitoring. (*Please include your mailing address on my information page.*)

## Payment Selection

Please select one of the following payment options, which will be used should you be eligible to receive a settlement payment:

☐ Venmo – Enter the mobile number associated with your Venmo account:

☐ Zelle – Enter the mobile number associated with your Zelle account:

☐ Physical Check - Payment will be mailed to the address provided above.

## Signature

I affirm under the laws of the United States that the information I have supplied in this claim form and any copies of documents that I am sending to support my claim are true and correct to the best of my knowledge.

I understand that I may be asked to provide more information by the Settlement Administrator before my claim is complete.

**Print Name**

**Date:** ____ – ____ – ____
        MM   DD   YYYY

**Signature**

4870-6595-3011.1 **Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

# EXHIBIT B

FROM: EMAIL ADDRESS

TO: EMAIL ADDRESS

RE: SUPERIOR AIR COURT ORDERED NOTICE OF CLASS ACTION SETTLEMENT

<<Unique ID>>

United States District Court for the Northern District of Illinois
*Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.*
Case No. 1:24-cv-04704-MFK

# If you are a U.S. resident whose Personal Information may have been accessed by an unauthorized third party as a result of a Security Incident involving Superior Air-Ground Ambulance Service, Inc. that occurred in May 2023, you may be entitled to benefits from a class action settlement.

*A federal court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

**You can learn more at: www.XXXXXXXXXX.com**

A $3.2 million settlement has been reached in a class action lawsuit against Superior Air-Ground Ambulance Service, Inc. ("Defendant") arising out of a Security Incident that occurred in May 2023, by an unauthorized third party that accessed Defendant's network and may have accessed Settlement Class Members' Personal Information ("PI"). Defendant denies the claims and allegations in the lawsuit.

The purpose of this Notice is to inform you of the class action and the proposed Settlement so you may decide whether to participate, opt out, object, or do nothing.

**Who's Included?** You are part of the Settlement Class if you are an individual residing in the United States whose Personal Information may have been accessed and/or acquired by an unauthorized third party as a result of the Security Incident that occurred in May 2023.

**What Does the Settlement Provide?** If you submit a Valid Claim, you may be able to receive the following benefits:

> **<u>Documented Out-of-Pocket Losses:</u>** With supporting documentation showing you incurred losses as a result of the Security Incident, you may be eligible for reimbursement up to $5,000.00.

> **AND**

> **<u>Pro Rata Cash Payment:</u>** You may elect to receive a Pro Rata Cash Payment. The amount of the Pro Rata Cash Payment will be determined on a pro rata (a legal term meaning equal share) basis after funds from the Settlement have been used to pay Class Counsel's Fees and Expenses, Service Awards, settlement administration costs, Documented Out-of-Pocket Losses and credit monitoring expenses.

> **AND**

**Identity Theft Protection Credit Monitoring:** In addition to receiving reimbursement for out-of-pocket losses and/or a cash payment, you may elect to receive two years of free 3-bureau credit monitoring services.

You must submit a Valid Claim online or by mail postmarked by **Month XX, 20YY.** If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, an email will be sent to you to elect your method of payment.

**Your Other Options.** If you do not want to be legally bound by the Settlement, you must opt out of the Settlement no later than **Month XX, 20YY**. If you do not want to opt out, you will give up the right to sue and will release any legal claims against the Released Parties, including Defendant, about the legal issues in this lawsuit. If you do not opt out, you may object to the Settlement by **Month XX, 20YY**. The Long Form Notice on the Settlement Website has instructions on how to opt out or object. If you do nothing, you will get no Settlement benefits, and you will be bound by the Settlement.

The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Class Counsel's request for Service Awards to the Class Representatives, attorneys' fees request of up to $1,083,333.33 plus reasonable litigation expenses from the $3.2 million Settlement Fund,, as well as any objections to the Settlement, including the Service Awards, fees, and costs. You or your personal lawyer may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXXXXX.com.

**This notice is a summary. Learn more about the Settlement** at www.XXXXXXXXX.com, or by calling toll free 1-XXX-XXX-XXXX.

# EXHIBIT C

United States District Court for the Northern District of Illinois

# If you are a U.S. resident whose Personal Information may have been accessed by an unauthorized third party as a result of a Security Incident involving Superior Air-Ground Ambulance Service, Inc. that occurred in May 2023, you may be entitled to benefits from a class action settlement.

*A Court has authorized this notice. This is **not** a solicitation from a lawyer.*

- A $3.2 million settlement has been reached in a class action lawsuit against Superior Air-Ground Ambulance Service, Inc. ("Defendant") arising out of a data security incident Defendant experienced in May 2023, by an unauthorized third party ("Security Incident").

- You are part of the Settlement Class if you are an individual residing in the United States whose Personal Information may have been accessed and/or acquired by an unauthorized third party as a result of the Security Incident that occurred in May 2023.

- Under the terms of the Settlement, Settlement Class Members who submit timely Valid Claims may be able to recover the following benefits:

    o **Documented Out-of-Pocket Losses:** With supporting documentation showing you incurred losses as a result of the Security Incident, you may be eligible for reimbursement up to $5,000.00.

    AND
    o **Pro Rata Cash Payment:** You may elect to receive a Pro Rata Cash Payment. The amount of the Pro Rata Cash Payment may increase or decrease on a *pro rata* (a legal term meaning equal share) basis after funds from the Settlement have been used to pay Class Counsel's Fees and Expenses, Service Awards, settlement administration costs, Documented Out-of-Pocket Losses and credit monitoring expenses.

    AND
    o **Identify Theft Protection and Credit Monitoring:** In addition to receiving reimbursement for out-of-pocket losses and/or a cash payment, you may elect to receive two (2) years of free 3-bureau credit monitoring services.

- **Business Practice Changes:** Although Defendant denies any wrongdoing or liability, Plaintiffs have received assurances that the Defendant is continuously implementing additional security enhancements including defensive tools and increased monitoring.

**This notice may affect your rights. Please read it carefully.**

| Your Legal Rights and Options | | Deadline |
|---|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get Settlement benefits is to submit a Valid Claim. | **Submitted online or Postmarked by MONTH DD, 20YY** |
| **OPT OUT OF THE SETTLEMENT** | Get no Settlement benefits. Keep your right to file your own lawsuit against Defendant about the legal claims in this lawsuit. | **Postmarked by MONTH DD, 20YY** |
| **OBJECT TO THE SETTLEMENT** | Stay in the Settlement, but tell the Court why you do not agree with the Settlement. You will still be bound by the Settlement if the Court approves it. | **Postmarked by MONTH DD, 20YY** |
| **DO NOTHING** | Get no Settlement benefits. Be bound by the Settlement. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

**Questions? Go to www.XXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

- The Court must still decide whether to approve the Settlement. There will be no Settlement benefits unless the Court approves the Settlement, and it becomes final.

## BASIC INFORMATION

### 1. Why is this Notice being provided?

A Court authorized this notice because you have the right to know about the proposed Settlement of this class action lawsuit and all of your rights and options before the Court decides to grant Final Approval of the Settlement. This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for the benefits, and how to get them.

The Honorable Matthew F. Kennelly of the United States District Court for the Northern District of Illinois is overseeing this class action. The lawsuit is known as *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.*, Case No. 1:24-cv-04704-MFK ("Action"). The persons who filed this Action are called the "Plaintiffs" and/or "Class Representatives" and the company sued, Superior Air-Ground Ambulance Service, Inc., is called the "Defendant."

### 2. What is this Action about?

Plaintiffs filed this lawsuit against Defendant. Plaintiffs allege that in May 2023, an unauthorized third party copied certain files from Defendant's network containing Personal Information ("PI") including names, addresses, dates of birth, Social Security numbers, driver's license or state identification numbers, financial account information payment card information, patient record information, medical diagnosis or condition information, medical treatment information, and health insurance information.

Plaintiffs brought this lawsuit against Defendant alleging legal claims for negligence, breach of implied contract, breach of fiduciary duty, violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2, *et seq.*, violation of the Michigan Consumer Protection Act, Mich. Comp. Laws. Ann. § 445.901, *et seq.*, and unjust enrichment.

Defendant denies these allegations and denies any wrongdoing or liability. The Court has not decided who is right. Instead, Plaintiffs and Defendant have agreed to a settlement to avoid the risk, cost, and time of continuing the Action.

### 3. Why is the Action a class action?

In a class action, one or more people (called plaintiff(s) or class representative(s)) sue on behalf of all people who have similar legal claims. Together, all these people are called a "class" or "class members." If the plaintiffs and defendant reach a settlement, the court resolves the issues for all class members via the settlement, except for those class members who timely opt out (exclude themselves) from the settlement.

The proposed Class Representatives in this lawsuit are Plaintiffs Kirkston Spann II and Rochelle Lampkin.

### 4. Why is there a Settlement?

Plaintiffs and Defendant do not agree about the legal claims made in the Action The Action has not gone to trial, and the Court has not decided in favor of Plaintiffs or Defendant. Instead, Plaintiffs and Defendant have agreed to settle the Action. The Class Representatives believe the Settlement is best

Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX

2

for all individuals in the Settlement Class because of the benefits available to the Settlement Class and the risks and uncertainty associated with continuing the Action.

## WHO IS INCLUDED IN THE SETTLEMENT?

**5. How do I know if I am part of the Settlement?**

You are part of the **Settlement Class** if you are an individual residing in the United States whose Private Information may have been accessed and/or acquired by an unauthorized party as a result of the Security Incident that occurred within Defendant's network in May 2023.

**6. Are there exceptions to being included in the Settlement?**

Yes. Excluded from the Settlement Class are: (1) Superior Air-Ground Ambulance Service, Inc. and its parents, subsidiaries, officers, and directors, and any entity in which Defendant has a controlling interest; (2) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (3) the Judge assigned to this litigation as well as their immediate family and staff; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge.

**7. What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Settlement Class member, you may go to the Settlement Website at www.XXXXXXXXXXX.com or call the Settlement Administrator's toll-free telephone number at 1-XXX-XXX-XXXX.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8. What does the Settlement provide?**

If you are a Settlement Class Member and you timely submit a Valid Claim, you may be eligible for the following Settlement benefits:

**Reimbursement for Documented Out-of-Pocket Losses:** All Settlement Class Members who submit a Valid Claim are eligible for up to a total of $5,000.00 per person for unreimbursed costs or expenses incurred by a Settlement Class Member between May 15, 2023 and the Claims Deadline as a result of the Security Incident.

You must submit documentation supporting your Claim Form for Documented Out-of-Pocket Losses, which may include but is not limited to, unreimbursed costs, expenses or charges incurred addressing or remedying identity theft, fraud or misuse of Personal Information and/or other issues reasonably traceable to the Security Incident.

Documentation supporting your losses can include receipts or other documentation that show the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

**Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

3

**AND**

**Pro Rata Cash Payment:** You may also elect to receive a Pro Rata Cash Payment. For purposes of calculating the Pro Rata Cash Payment, the Settlement Administrator must distribute the funds in the Settlement for the payment of Class Counsels' Fees and Expenses, Service Awards, settlement administration costs, Valid Claims for Documented Out-of-Pocket Losses, and credit monitoring expenses. The amount of the Pro Rata Cash Payment may be increased or decreased on a *pro rata* basis, based on the funds remaining in the Settlement Fund after these payments.

**AND**

**Identity Theft Protection and Credit Monitoring:** In addition to selecting a Pro Rata Cash Payment and/or compensation for Documented Out-of-Pocket Losses, you may elect to receive two (2) years of free three-bureau credit monitoring.

**Business Practice Changes:** Although Defendant denies any wrongdoing or liability, Plaintiffs have received assurances that the Defendant is continuously implementing additional security enhancements including defensive tools and increased monitoring.

| 9. What am I giving up to receive Settlement benefits or stay in the Settlement Class? |
|---|

Unless you opt out of the Settlement, you are choosing to remain in the Settlement Class. If the Settlement is approved and becomes final, all Court orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against the Released Parties, including Defendant, about the legal issues in this lawsuit that are released by this Settlement. The specific rights you are giving up are called "Released Claims."

| 10. What are the Released Claims? |
|---|

The Settlement Agreement in Section VI describes the Released Claims and the Release, in necessary legal terminology, so please read this section carefully. The Settlement Agreement is available at www.XXXXXXXXX.com or in the public Court records on file in this lawsuit. For questions regarding the Release or Released Claims and what the language in the Settlement Agreement means, you can also contact Class Counsel listed in Question 15 for free, or you can talk to your own lawyer at your own expense.

## HOW TO GET BENEFITS FROM THE SETTLEMENT

| 11. How do I make a Claim for Settlement benefits? |
|---|

To receive any of the benefits described in Question 8, you must submit a Valid Claim**, postmarked** or submitted online by **MONTH DD, 20YY**. Claim Forms may be submitted online at www.XXXXXXXXXXXX.com or printed from the Settlement Website and mailed to the Settlement Administrator at the address on the Claim Form. The quickest way to submit a Claim is online. Claim Forms are also available by calling 1-XXX-XXX-XXXX or by writing to:

Superior Ambulance Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**Claim Forms must be submitted online or by mail postmarked by MONTH DD, 20YY.**

## 12. What happens if my contact information changes after I submit a Claim?

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX or by writing to:

Superior Ambulance Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

## 13. When will I receive my Settlement benefits?

If you submit a timely and Valid Claim, payment will be made to you by the Settlement Administrator after the Settlement is approved by the Court and becomes final.

It may take time for the Settlement to be approved and become final. Please be patient and check www.XXXXXXXXX.com for updates.

## 14. How will I receive my payment?

If you submit a timely and Valid Claim for payment, and if your Claim and the Settlement are finally approved, you will be sent an electronic payment to the electronic payment option that you select when you file your claim, or will be sent a paper check if you select that option. Several electronic payment options will be available, or you can elect a check. Please ensure you have provided a current and complete email address. If you select a paper check, he Settlement Administrator will attempt to send you a check relying on your physical address submitted on your Claim Form.

# THE LAWYERS REPRESENTING YOU

## 15. Do I have a lawyer in this lawsuit?

Yes, the Court has appointed Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and David S. Almeida of Almeida Law Group LLC as Class Counsel lawyers to represent you and the Settlement Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this lawsuit.

## 16. How will Class Counsel be paid?

Class Counsel will file a motion asking the Court to award attorneys' fees of up to 1/3 ($1,083,333.33) of the $3.2 million Settlement Fund, plus reimbursement of costs. The Court may award less than the amount requested. If awarded by the Court, the Settlement Administrator will pay attorneys' fees and costs out of the Settlement Fund.

Class Counsel's motion for Attorneys' Fees and Expenses, and Service Awards will be made available on the Settlement Website at www.XXXXXXXXXX.com before the deadline for you to object to or opt out of the Settlement.

# OPTING OUT OF THE SETTLEMENT

If you are a Settlement Class Member and want to keep any right you may have to sue or continue to sue the Released Parties on your own based on the legal claims raised in this lawsuit or released by

**Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

5

the Released Claims, then you must take steps to get out of the Settlement. This is called opting out of the Settlement.

### 17. How do I opt out of the Settlement?

To opt out of the Settlement, you must timely mail written notice of a request to opt out. The written notice must include:

    (1) Your full name and current address;
    (2) A statement indicating your request to be excluded from the Settlement Class; and
    (3) Your physical signature as a Settlement Class member;

The opt out request must be **mailed** to the Settlement Administrator at the following address, and be **postmarked** by **MONTH DD, 20YY**:

Superior Ambulance Settlement Administrator
Exclusions
PO Box XXXX
Portland, OR 97XXX-XXXX

**You cannot opt out by telephone or by email.**

"Mass" or "class" requests for exclusion filed by third parties on behalf of a "mass" or "class" of Settlement Class Members or multiple Settlement Class Members where an opt out has not been signed by each and every individual Settlement Class Member will not be allowed.

### 18. If I opt out can I still get anything from the Settlement?

No. If you opt out, you will not be entitled to receive any Settlement benefits, but you will not be bound by any judgment in this lawsuit. You can only get Settlement benefits if you stay in the Settlement and submit a Valid Claim.

### 19. If I do not opt out, can I sue Defendant for the same thing later?

No. Unless you opt out, you give up any right to sue Defendant and other Released Parties for the legal claims this Settlement resolves and Releases relating to the Security Incident. You must opt out of the lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Defendant or other Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court that I do not like the Settlement?

If you are a Settlement Class Member, you can tell the Court you do not agree with all or any part of the Settlement and/or Class Counsel's motion for Attorneys' Fees and Expenses.

To object, you must mail a timely, written objection stating that you object in *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.*, Case No. 1:24-cv-04704-MFK. Your objection must be **postmarked** by **MONTH DD, 20YY**.

The objection must also include all of the following information:

    (1)   Your full name, current address, current telephone number;

**Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**
**6**

(2) The case name and case number, *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.,* Civil Action No. 1:24-cv-04704-MFK,

(3) Documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice or Email Notice you received,

(4) A statement of the position(s) you wish to assert, including the factual and legal grounds for the position(s),

(5) Copies of any other documents that you wish to submit in support of your position,

(6) Whether you intend to appear at the Final Approval Hearing,

(7) Whether you are represented by a lawyer and, if so, the name, address, and telephone number of your lawyer, and

(8) Your signature (a lawyer's signature is not sufficient).

To be timely, written notice of an objection in the appropriate form must be mailed **postmarked** by **MONTH DD, 20YY**, to the Settlement Administrator at:

Superior Ambulance Settlement Administrator
Objections
PO Box XXXX
Portland, OR 97XXX-XXXX

Any Settlement Class Member who fails to comply with the requirements for objecting detailed above will waive and forfeit any and all rights they may have to appear separately and/or to object to the Settlement Agreement and will be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the lawsuit.

| 21. What is the difference between objecting and asking to opt out? |
| --- |

Objecting is simply telling the Court you do not like something about the Settlement or requested attorneys' fees and expenses. You can object only if you stay in the Settlement Class (meaning you do not opt out of the Settlement). Opting out of the Settlement is telling the Court you do not want to be part of the Settlement Class or the Settlement. If you opt out, you cannot object to the Settlement.

# THE FINAL APPROVAL HEARING

| 22. When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold a Final Approval Hearing on **MONTH DD, 20YY, at X:XX a.m./p.m.** before the Honorable Matthew F. Kennelly at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago IL 60604 or via video conference or by phone. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate and decide whether to approve the Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, and Service Awards.

If there are objections, the Court will consider them. The Court will also listen to Settlement Class Members who have asked to speak at the hearing.

**Note:** The date and time of the Final Approval Hearing are subject to change. The Court may also decide to hold the hearing via video conference or by phone. Any change will be posted at www.XXXXXXXXX.com.

| 23. Do I have to attend to the Final Approval Hearing? |
| --- |

Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX

7

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you mail an objection, you do not have to attend the Final Approval Hearing to speak about it. As long as you mail your written objection on time, the Court will consider it.

### 24. May I speak at the Final Approval Hearing?

Yes, as long as you do not opt out, you can (but do not have to) participate and speak for yourself at the Final Approval Hearing. This is called making an appearance. You also can have your own lawyer speak for you, but you will have to pay for the lawyer yourself.

If you want to appear, or if you want your own lawyer instead of Class Counsel to speak for you at the Final Approval Hearing, you must follow all of the procedures for objecting to the Settlement listed in Question 20 above—and specifically include a statement whether you and your lawyer will appear at the Final Approval Hearing.

## IF YOU DO NOTHING

### 25. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will not receive any Settlement benefits, and you will give up rights explained in the "Opting Out of the Settlement" section of this notice, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against any of the Released Parties, including Defendant, about the legal issues in this lawsuit that are released by the Settlement Agreement relating to the Security Incident.

## GETTING MORE INFORMATION

### 26. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www.XXXXXXXXXX.com, by calling 1-XXX-XXX-XXXX or by writing to:

Superior Ambulance Settlement Administrator
PO Box XXXX
Portland, OR 97XXX-XXXX

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT'S CLERK OFFICE REGARDING THIS NOTICE.**

**Questions? Go to www.XXXXXXXXXXXXX.com or call 1-XXX-XXX-XXXX**

8

# **EXHIBIT D**

Superior Ambulance Settlement Administrator
PO Box XXXX
Portland, OR 97xxx-xxxx



FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

<u>Court-Approved Legal Notice</u>
*Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.*
Case No. 1:24-cv-04704-MFK
United States District Court for the Northern District of Illinois

**If you are a U.S. resident whose Personal Information may have been accessed by an unauthorized third party as a result of a Security Incident involving Superior Air-Ground Ambulance Service, Inc. that occurred in May 2023, you may be entitled to benefits from a class action settlement.**

*A Court has authorized this notice. This is **not** a solicitation from a lawyer.*

www.XXXXXXXXXX.com
1-XXX-XXX-XXXX

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

<<UNIQUE ID>>

A $3.2 million settlement has been reached in a class action lawsuit against Superior Air-Ground Ambulance Service, Inc. ("Defendant") arising out of a Security Incident that occurred in May 2023, by an unauthorized third party that accessed Defendant's network and may have accessed Settlement Class Members' Personal Information ("PI"). Defendant denies all of the claims and allegations in the lawsuit.

**Who is Included?** You are part of the Settlement Class if you are an individual residing in the United States whose Personal Information may have been accessed and/or acquired by an unauthorized third party as a result of the Security Incident that occurred in May 2023.

**What does the Settlement Provide?** If you submit a Valid Claim, you may be able to receive the following benefits:

**Documented Out-of-Pocket Losses:** With supporting documentation showing you incurred losses as a result of the Security Incident, you may be eligible for reimbursement up to $5,000.00.
   **AND**
**Pro Rata Cash Payment:** You may elect to receive a Pro Rata Cash Payment. The amount of the Pro Rata Cash Payment will be determined on a pro rata (a legal term meaning equal share) basis after funds from the Settlement have been used to pay Class Counsel's Fees and Expenses, Service Awards, settlement administration costs, Documented Out-of-Pocket Losses and credit monitoring expenses.
   **AND**
**Identity Theft Protection and Credit Monitoring:** In addition to receiving reimbursement for out-of-pocket losses and/or a cash payment, you may elect to receive two years of free 3-bureau credit monitoring services.

You must submit a Valid Claim online or by mail postmarked by **Month XX, 20YY.**

**Other Options**. If you do not want to be legally bound by the Settlement, you must opt out of the Settlement no later than **Month XX, 20YY**. If you do not want to opt out, you will give up the right to sue and will release any legal claims against the Released Parties, including Defendant, about the legal issues in this lawsuit. If you do not opt out, you may object to the Settlement by **Month XX, 20YY**. The Long Form Notice on the Settlement Website has instructions on how to opt out or object. If you do nothing, you will get no Settlement benefits, and you will be bound by the Settlement.

The Court will hold a Final Approval Hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Class Counsel's request for Service Awards to the Class Representatives, attorneys' fees request of up to $1,083,333.33 of the $3.2 million Settlement Fund, plus reimbursement of costs, as well as any objections to the Settlement, including the Service Awards, fees, and costs. You or your personal lawyer may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, and if so, instructions will be at www.XXXXXXXX.com.

**This notice is a summary. Learn more about the Settlement** at www.XXXXXXXXX.com, or by calling toll free 1-XXX-XXX-XXXX.

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| KIRKSTON SPANN II and ROCHELLE LAMPKIN, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC.,<br><br>Defendant. | Case No: 1:24-cv-04704<br><br>Judge Matthew F. Kennelly |

**[PROPOSED] PRELIMINARY APPROVAL ORDER**

Before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement **(Doc. No. __)** (the "Motion"). The terms of the proposed class action settlement are set forth in a Settlement Agreement (the "Settlement Agreement") by, between and among Plaintiffs Kirkston Spann II and Rochelle Lampkin (collectively, "Plaintiffs") and Defendant Superior Air-Ground Ambulance Service, Inc. ("Defendant" or "Superior Ambulance" and together with Plaintiffs, the "Parties"), which is attached, with accompanying exhibits, as **Exhibit 1** to Plaintiffs' Memorandum of Law in Support of their Motion.[1]

Having fully considered the issue, the Court hereby **GRANTS** the Motion and **ORDERS** as follows:

1. **Jurisdiction.** The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and personal jurisdiction over the parties before it. Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

---

[1] All defined terms in this Order Granting Preliminary Approval of Class Action Settlement have the same meaning as set forth in the Settlement Agreement unless otherwise indicated.

2. **Class Certification for Settlement Purposes Only**. The Settlement Agreement provides for a Settlement Class defined as follows:

> All individuals residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023.

Excluded from the Settlement Class are the following individuals and/or entities: (i) Superior Air-Ground Ambulance Service, Inc. and its parents, subsidiaries, officers and directors, and any entity in which Defendant has a controlling interest; (ii) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (iii) the Judge assigned to this litigation as well as their immediate family and staff; and (iv) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge.

3. **Certification of the Settlement Class is Warranted.** The Court also finds that it will likely be able to certify the Settlement Class because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Specifically, the Court finds, for settlement purposes only, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact that are common to the Settlement Class; (c) the claims of the Class Representative are typical of and arise from the same operative facts and the Class Representatives seek similar relief as the claims of the Settlement Class Members; (d) the Class Representatives will fairly and adequately protect the interests of the Settlement Class as the Class Representatives have no interests antagonistic to or in conflict with the Settlement Class and have retained experienced and competent counsel to prosecute this Litigation on behalf of the Settlement Class; (e) questions of law or fact common to Settlement Class Members predominate over any questions affecting only individual members; and (f) a class

action and class settlement is superior to other methods available for a fair and efficient resolution of this Litigation.

4. **Notifying Class Members regarding the Settlement is Warranted.** The Court finds, further to Federal Rule of Civil Procedure 23(e)(1), that the provision of notice is justified and warranted because the Court further finds that it will likely be able to approve the proposed Settlement as fair, reasonable and adequate.

5. **Findings Concerning the Notice Documents & Plan**. The Court finds that the proposed form, content and method of giving Notice to the Settlement Class as described in the Notice program and the Settlement Agreement and its exhibits: (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Litigation, the terms of the proposed Settlement, and their rights under the proposed Settlement including, but not limited to, their rights to object to or exclude themselves from the proposed Settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; (d) meet all applicable requirements of law including Federal Rule of Civil Procedure 23(c); and (e) meet the requirements of the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice provided for in the Settlement Agreement is written in plain language, uses simple terminology and is designed to be readily understandable by Settlement Class Members. The proposed notice program set forth in the Settlement Agreement and Claim Form and the Notices attached to the Settlement Agreement as **Exhibits A, B, C-1 and C-2** is therefore

3

**APPROVED**, and the Claims Administrator is directed to carry out the Notice program in conformance with the Settlement Agreement.[2]

6. **Claims Process**. Settlement Class Counsel and Defendant have created a process for Settlement Class Members to claim benefits under the Settlement. The Court preliminarily approves this process and directs the Claims Administrator to make the Claim Form or its substantial equivalent available to Settlement Class Members in the manner specified in the Notice.

The Claims Administrator will be responsible for effectuating the claims process. Settlement Class Members who qualify for and wish to submit a Claim Form shall do so in accordance with the requirement and procedures specified in the Notice and the Claim Form. If the Final Order and Judgment is entered, all Settlement Class Members who qualify for any benefit under the Settlement but fail to submit a claim in accordance with the requirements and procedures specified in the Notice and the Claim Form shall be forever barred from receiving any such benefit, but will in all other respects be subject to and bound by the provisions in the Final Order and Judgment including the releases contained therein.

7. **Exclusion from Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must: (a) state the Settlement Class Member's full name, current address, and signature; and (b) specifically state his or her desire to be excluded from the Settlement and from the Settlement Class. To be effective, such requests for exclusion must be postmarked no later than the Opt-Out Date, which is no later than sixty (60) days from the date on which the notice program commences, and as stated in the Notice.

---

[2] Non-material modifications to these Exhibits may be made by the Claims Administrator in consultation and agreement with the Parties but without further order of the Court.

The Claims Administrator shall promptly furnish to Class Counsel and to Defendant's counsel a complete list of all timely and valid requests for exclusion within 10 days following entry of the Preliminary Approval Order.

8.      **<u>Objections and Appearances</u>**. A Settlement Class Member (who does not submit a timely written request for exclusion) desiring to object to the Settlement Agreement may submit a timely written notice of his or her objection by the Objection Date and as stated in the Notice. The Long Notice and the Settlement Website shall instruct Settlement Class Members who wish to object to the Settlement Agreement to send their written objections to the Claims Administrator at the address indicated in the Long Notice. The Notice shall advise Settlement Class Members of the deadline for submission of any objections—the "Objection Date"—which is no later than sixty (60) days after the Class Notice Date. Any such notices of an intent to object to the Settlement Agreement must be written and must include all of the following: (i) the objector's full name, current address, current telephone number, and be personally signed, (ii) the case name and case number, *Spann, et al. v. Superior Air-Ground Ambulance Service, Inc.*, Civil Action No. 1:24-cv-04704-MFK, (iii) documentation sufficient to establish membership in the Settlement Class, such as a copy of the Postcard Notice or Email Notice he or she received, (iv) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s), (v) copies of any other documents that the objector wishes to submit in support of his/her position, (vi) whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and; (vii) whether the objecting Settlement Class Member is represented by counsel and, if so, the name, address, and telephone number of his/her counsel, Subject to approval of the Court, any objecting Settlement Class Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court.

Any Settlement Class Member who fails to comply with the requirements for objecting shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Litigation. The provisions stated in Paragraph 64 of the Settlement Agreement are the exclusive means for any challenge to the Settlement Agreement. Any challenge to the Settlement Agreement, the final order approving this Settlement Agreement or the Final Order and Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

9.     **Effect of Release.** If a Final Order and Judgment is entered, all Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class shall be bound by the terms of this Settlement Agreement and the Final Order and Judgment. All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any cash benefits of and/or be bound by the terms of the Settlement Agreement.

10.     **Claims Administrator**. The Court appoints Epiq Global as the Claims Administrator, with responsibility for class notice and settlement administration. The Claims Administrator is directed to perform all tasks the Settlement Agreement requires. The Claims Administrator's fees will be paid pursuant to the terms of the Settlement Agreement.

11.     **Settlement Class Representatives & Settlement Class Counsel**. The Court finds that Plaintiffs will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as the Class Representatives. Additionally, the Court finds that Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and David S. Almeida of Almeida Law Group LLC will likely

6

satisfy the requirements of Rule 23(e)(2)(A) and should be appointed Class Counsel pursuant to Rule 23(g)(1).

12.    **Preliminary Settlement Approval.** Upon preliminary review, the Court finds the Settlement is fair, reasonable and adequate to warrant providing notice of the Settlement to the Settlement Class and accordingly is preliminarily approved. In making this determination, the Court has considered the monetary and non-monetary benefits provided to the Settlement Class through the Settlement, the specific risks faced by the Settlement Class in prevailing on their claims, the good faith, arms' length negotiations between the Parties and absence of any collusion in the Settlement, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, the Settlement treats the Settlement Class Members equitably and all of the other factors required by Rule 23 and relevant case law.

13.    **Termination of Settlement:** In the event that the Final Approval Order is not entered, or a Final Approval Order is subsequently reversed on appeal, the Parties agree to use their best efforts to cure any defect(s) identified by the Court. If, despite their best efforts, the Parties cannot cure said defects, the Settlement Agreement, including any releases or dismissals hereunder, is canceled, and no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation, documentation or other part or aspect of the Parties' settlement discussions, shall have any effect, nor shall any such matter be admissible in evidence for any purpose, or used for any purposes whatsoever in the Action, and all Parties shall be restored to their prior rights and positions as if the Settlement Agreement had not been entered into. The Settlement Agreement may also be terminated by Defendant under the terms of the Settlement Agreement.

14. **Use of Order**. This Preliminary Approval Order shall have no force or effect if the Final Order and Judgment is not entered or there is no Effective Date and shall not be construed or used as an admission, concession or declaration by or against Defendant of any fault, wrongdoing, breach or liability. Nor shall this Preliminary Approval Order be construed or used as an admission, concession or declaration by or against the Class Representatives or any other Settlement Class Member that his or her claims lack merit or that the relief requested is inappropriate, improper unavailable, or as a waiver by any Party of any defense or claims they may have in this Litigation or in any other lawsuit.

15. **Continuance of Hearing**. The Court reserves the right to adjourn or continue the Final Fairness Hearing and related deadlines without further written notice to the Settlement Class. If the Court alters any of those dates or times, the revised dates and times shall be posted on the Settlement Website maintained by the Administrator. The Court may approve the Settlement, with such modifications as may be agreed upon by the Parties, if appropriate, without further notice to the Settlement Class.

16. **Stay of Litigation.** All proceedings in the Litigation, other than those related to approval of the Settlement Agreement, are hereby stayed. Further, any actions brought by Settlement Class Members concerning the Released Claims are hereby enjoined and stayed pending Final Approval of the Settlement Agreement.

17. **Final Approval Hearing**. A Final Approval Hearing shall be held on _____, 202___, at Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, IL 60604, where the Court will determine, among other things, whether: (a) this Litigation should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (b) the Settlement should be approved as

8

fair, reasonable and adequate and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) this Litigation should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members (who have not timely and validly excluded themselves from the Settlement) should be bound by the releases set forth in the Settlement Agreement; (e) the application of Class Counsel for an award of Attorneys' Fees, Costs and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (f) the application of the Class Representatives for a Service Award should be approved. This hearing may be held remotely.

18.     **Schedule and Deadlines**. The Court orders the following schedule of dates for the specified actions/further proceedings:

<strong><u>SETTLEMENT TIMELINE</u></strong>

| | |
|---|---|
| **<u>Grant of Preliminary Approval</u>** | |
| Defendants provide Settlement Class Member Information to the Settlement Administrator | Within 14 days following entry of Preliminary Approval Order |
| Class Notice Date | 45 days after Preliminary Approval. |
| Class Counsel's Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representative Service Award | 14 days before Objection and Opt-Out Deadlines |
| Objection Deadline | 60 days after Class Notice Date |
| Opt-Out Deadline | 60 days after Class Notice Date |
| Claims Deadline | 90 days after Class Notice Date |
| **<u>Final Approval Hearing</u>** | 150 days after Preliminary Approval Order (at minimum) |
| Motion for Final Approval Deadline | 14 days before Final Approval Hearing Date |
| Settlement Administrator Provide Notice of Opt-Outs and/or Objections | 16 days before Final Approval Hearing Date |

**SO ORDERED THIS _____ DAY OF _____, 2024.**


_____

Hon. Matthew F. Kennelly
United States District Court Judge

# EXHIBIT 2



# FIRM RESUME /

# BIOGRAPHY OF GARY M. KLINGER



Milberg Coleman Bryson Phillips Grossman ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, Lawdragon, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> – THE NEW YORK TIMES

www.milberg.com

2

# PRACTICE AREAS

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

## ANTITRUST & COMPETITION LAW

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## FINANCIAL LITIGATION

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

## CYBERSECURITY & DATA PRIVACY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

# LEADERSHIP ROLES

In re: Google Play Consumer Antitrust Litigation

In re: Elmiron (Pentosan Polysulfate Sodium) Products Liability Litigation

In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: Blackbaud Inc., Customer Data Breach Litigation

In re: Paragard IUD Products Liability Litigation

In re: Seresto Flea & Tick Collar, Marketing Sales Practices & Product Liability Litigation

In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

In re: Allergan Biocell Textured Breast Implant Products Liability Litigation

In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation

In re: Guidant Corp. Implantable Defibrillators Product Liability Litigation

In re: Ortho Evra Products Liability Litigation

In re: Yasmin and YAZ (Drospirenone) Marketing, Sales Practices and Products Liability Litigation

In re: Kugel Mesh Hernia Patch Products Liability Litigation

In re: Medtronic, Inc. Sprint Fidelis Leads Products Liability Litigation

In re: Stand 'N Seal Products Liability Litigation

In re: Chantix (Varenicline) Products Liability Litigation

In re: Fosamax (alendronate Sodium) Products Liability Litigation

In re: Benicar (Olmesartan) Products Liability Litigation

In re: Onglyza (Saxagliptin) & Kombiglyze Xr (Saxagliptin & Metformin) Products Liability Litigation

In re: Risperdal and Invega Product Liability Cases

In re: Mirena IUS Levonorgestrel-Related Products Liability Litigation

In re: Incretin-based Therapies Product Liability Litigation

In re: Reglan/Metoclopromide

In re: Levaquin Products Liability Litigation

In re: Zimmer Nexgen Knee Implant Products Liability Litigation

In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation

In re: Propecia (Finasteride) Products Liability Litigation

In re: Transvaginal Mesh (In Re C. R. Bard, Inc., Pelvic Repair System Products Liability Litigation; In Re Ethicon, Inc., Pelvic Repair System Products Liability Litigation; In Re Boston Scientific, Inc., Pelvic Repair System Products Liability; In Re American Medical Systems, Pelvic Repair System Products Liability, and others)

In re: Fluoroquinolone Product Liability Litigation

In re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation

In re: Recalled Abbott Infant Formula Products Liability Litigation

Home Depot, U.S.A., Inc. v. Jackson

Webb v. Injured Workers Pharmacy, LLC

# NOTABLE RECOVERIES

## $4 Billion Settlement

In re: Prudential Insurance Co. Sales Practice Litigation

## $3.2 Billion Settlement

In re: Tyco International Ltd., Securities Litigation

## $1.14 Billion Settlement

In Re: Nortel Networks Corp. Securities Litigation

## $1 Billion-plus Trial Verdict

Vivendi Universal, S.A. Securities Litigation

## $1 Billion Settlement

NASDAQ Market-Makers Antitrust Litigation

## $1 Billion Settlement

W.R. Grace & Co.

## $1 Billion-plus Settlement

Merck & Co., Inc. Securities Litigation

## $775 Million Settlement

Washington Public Power Supply System Securities Litigation

## $586 Million Settlement

In re: Initial Public Offering Securities Litigation

6

# GARY M. KLINGER

**Gary M. Klinger** is a Senior Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been ranked by Chambers and Partners as Band 3 for Privacy & Data Security Litigation (2024)[1] and having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation (2024).[2] Law360 recently highlighted Mr. Klinger's work in the privacy space.[3]

Mr. Klinger has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country.[4] Mr. Klinger and his firm are largely responsible for developing the favorable case law that many plaintiffs rely on in the data breach space.[5] Mr. Klinger has also successfully litigated privacy class actions through class certification. *E.g., Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018).

Over the past 3 years, Mr. Klinger has settled on a classwide basis more than one hundred (100) class actions involving privacy violations, the majority of which are data breaches, in state and federal courts across the country as lead or co-lead counsel. To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger serves as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);

- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);

- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).

---

[1] Only three plaintiffs' lawyers in the country received the distinction of being ranked by Chambers and Partners for Privacy & Data Security Litigation.
[2] See https://chambers.com/lawyer/gary-klinger-usa-5:26875006; https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.
[3] https://www.law360.com/articles/1854005/rising-star-milberg-s-gary-klinger.
[4] See, e.g., *Isiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JDE (C.D. Cal.) (where Mr. Klinger is co-lead counsel in a data breach involving more than 17 million consumers); *In re MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers).
[5] *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM

8



# **EXHIBIT 3**



The Almeida Law Group LLC is a class action litigation boutique committed to advocating for individuals, families and small businesses who have suffered because of corporate malfeasance. We are accomplished, experienced and credentialed class action practitioners, and we represent our clients in consumer protection, false labeling, unfair and deceptive practices cases as well as data privacy, technology and security matters including, but not limited to, data breaches, pixel tracking and claims under various consumer protection and privacy-related statutes such as the Electronic Communications Privacy Act ("ECPA"), the California Medical Information Act ("CMIA"), the Illinois Biometric Information and Privacy Act ("BIPA"), the Video Privacy Protection Act ("VPPA") and the Telephone Consumer Protection Act ("TCPA").

Our attorneys began their training at some of the most esteemed law schools in the country including Columbia, Cornell, Georgetown, Harvard and the University of Chicago. Excelling at each of these rigorous schools, our attorneys received top honors, contributed to prestigious law journals and completed numerous externships. Our attorneys have also completed highly selective public interest fellowships, federal clerkships in the Northern District of Illinois, Eastern District of Pennsylvania and the District of South Carolina as well as internships at the United States Attorney's Offices in Atlanta and Baltimore.

With those foundations in place, our attorneys gained invaluable experience and honed their litigation skills by working at some of the very best law firms in the world including:

- Benesch, Friedlander, Coplan & Aronoff LLP
- Covington & Burling LLP
- Faegre Drinker Biddle & Reath LLP
- K&L Gates LLP
- Kilpatrick Townsend & Stockton LLP
- Kirkland and Ellis LLP
- Milbank Tweed Hadley & McCloy LLP
- Quinn Emanuel Urquhart & Sullivan LLP
- Sheppard Mullin Richter & Hampton LLP
- Steptoe & Johnson LLP

1

These decades of experience set us apart from many plaintiffs' firms; we are acutely aware of how companies will respond in our cases because we represented the exact same types of companies for years. Coupled with our educations and training, this insider knowledge equips us to strategically utilize our experience for our clients' benefit.

Our practice is truly national as we represent clients in class action litigation in federal and state courts throughout the country. Our attorneys are licensed to practice in Alabama, Arizona, California, Florida, Georgia, Illinois, New York, South Carolina and Wisconsin. In short, our Firm is composed of a dedicated team of legal professionals with the knowledge, experience and unwavering commitment to obtain the best possible legal results for our clients.

### PIXEL TRACKING CASES IN WHICH OUR FIRM HAS SERVED AS LEAD OR CO-COUNSEL

- *John v. Froedtert Health, Inc.*, 23-CV-1935 (Wis. Cir. Ct.) (co-counsel in pixel tracking class action, settled on a class-wide basis; final approval Sept. 29, 2023)

- *In re Advocate Aurora Health Pixel Litigation*, 2:22-cv-01253 (E.D. Wis.) (co-counsel in consolidated pixel tracking class action which settled on a class-wide basis)

- *Guenther v. Rogers Behavioral Health System, Inc.*, (Wis. Cir. Ct.) (co-counsel in pixel tracking class action, settled on a class-wide basis)

- *Doe v. ProHealth Care*, 2:23-cv-00296 (E.D. Wis.) (co-counsel in consolidated pixel tracking class action)

- *Vriezen v. Group Health Plan, Inc.*, 23-cv-00267 (D. Minn.) (counsel in consolidated pixel tracking class action)

- *Randy Mrozinski et al vs. Aspirus, Inc.,* 2023CV000170 (Wisc. Cir. Ct., Marathon County) (co-lead counsel in pixel tracking class action)

- *McCulley v. Banner Health,* 2:23-cv-00985 (D. Ariz.) (co-lead counsel in consolidated pixel tracking class action)

- *Heard v. Torrance Memorial Medical Center,* 22-cv-36178 (9th Cir.) (co-lead counsel in consolidated pixel tracking class action)

- *Doe v. Adventist Health Care Network, Inc.,* 22ST-cv-36304 (L.A. Sup. Ct.) (co-lead counsel in consolidated pixel tracking class action)

- *Isaac v. Northbay Healthcare Corp.,* FCS059353 (L.A. Sup. Ct.) (co-lead counsel in consolidated pixel tracking class action)

- *Mayer v. Midwest Physicians Administrative Services LLC,* 1:23-cv-03132 (N.D. Ill.) (co-lead counsel in pixel tracking class action)

- *Smith v. Loyola University Medical Center*, 2023-CH-8410 (Cook County Cir. Ct.) (co-lead counsel in pixel tracking class action)

2

- *Kaplan v. Northwell Health,* 2:23-cv-07205 (E.D. N.Y.) (counsel in pixel tracking class action)
- *Cooper v. Mount Sinai Health System Inc.,* 1:23-cv-09485 (S.D.N.Y.) (counsel in pixel tracking class action)
- *Kane v. University of Rochester Medical Center*, 6:23-cv-06027 (W.D.N.Y.) (counsel in pixel tracking class action)
- *Doe v. Workit Health Inc.,* 2:23-cv-11691 (E.D. Mich.) (counsel in telehealth pixel tracking class action, final approval hearing set for February 6, 2025)
- *Strong v. LifeStance Health Group Inc.,* 2:23-cv-00682 (D. Ariz.) (counsel in telehealth pixel tracking class action)
- *Federman v. Cerebral Inc.,* 2:23-cv-01803 (C.D. Cal.) (counsel in telehealth pixel tracking class action)
- *Marden v. LifeMD Inc.,* 1:23-cv-07469 (S.D.N.Y.) (counsel in telehealth pixel tracking class action)
- *R.C. & T.S. v. Walgreens Co.,* 5:23-cv-01933 (C.D. Cal.) (counsel in telehealth pixel tracking class action)
- *T.D. v. Piedmont Healthcare Inc.,* 2023-cv-387619 (N.D. Ga.) (counsel in pixel tracking class action)
- *K.S.B. v. Wisp, Inc.,* 3:23-cv-06155 (N.D. Cal.) (counsel in telehealth pixel tracking class action)
- *Doe v. Wellstar Health System, Inc.*, 1:24-cv-01748 (N.D. Ga.) (co-lead counsel in telehealth pixel tracking class action)
- *Reedy v. Everlywell, Inc.*, 1:24-cv-02713 (N.D. Ill.) (co-lead counsel in telehealth pixel tracking class action)
- *Pattison, et al. v. Teladoc Health, Inc.*, 7:23-cv-11305-NSR (S.D.N.Y); *Taylor, et al. v. Teladoc Health, Inc.*, 7:24-cv-00664-NSR (S.D.N.Y) (co-lead counsel in operative pixel tracking class action)
- *Macalpine et al v. Onnit, Inc.*, 1:24-cv-00933 (W.D.Tx.) (counsel in pixel class action)

**DATA BREACH CASES IN WHICH OUR FIRM HAS SERVED AS LEAD OR CO-COUNSEL**

- *In re Practice Resources, LLC Data Security Breach Litigation*, 6:22-cv-00890 (N.D.N.Y.) (co-lead counsel in consolidated data privacy class action, settled on a class-wide basis, final approval hearing set for February 12, 2025)
- *In re City of Hope Data Security Breach Litigation*, 24STCV09935 (L.A. Sup. Ct.) (counsel in consolidated data breach class action)

- *Catanach v. Bold Quail Holdings, LLC et al.*, 2:24-cv-01835 (C.D. Cal.) (lead counsel in data breach class action)
- *Tambroni et al v. WellNow Urgent Care, P.C. et al.*, 1:24-cv-01595 (N.D. Ill.) (co-lead counsel in data breach class action)
- *Spann v. Superior Air-Ground Ambulance Service, Inc.*, 1:24-cv-04704 (N.D. Ill.); *Lambkin v. Superior Air-Ground Ambulance Service, Inc.*, 1:24-cv-04760 (N.D. Ill.) (co-lead counsel in operative data breach class action)
- *Hulse v. Acadian Ambulance Services, Inc.*, 6:24-cv-01011 (W.D. La.) (Executive Committee in consolidated data breach class action)
- *Gorder v. FCDG Management LLC d/b/a First Choice Dental*, 2024-CV-002164 (Dane County Circuit Court) (co-lead counsel in data breach class action)

### OTHER DATA BREACH CASES IN WHICH OUR FIRM IS INVOLVED

- *McHugh v. Enzo Biochem, Inc.*, 2:23-cv-04326 (E.D. N.Y.)
- *Meyers v. Onix Groups LLC*, 2:23-cv-0228 (E.D. Penn.)
- *Coy v. Roosevelt University,* 2024LA000283 (Cir. Ct. Ill., Will County)
- *Kolstedt v. TMX Finance Corporate Services, Inc.*, 4:23-cv-00076 (S.D. Ga.)
- *Rasmussen v. Uintah Basin Healthcare*, 2:23-cv-00322 (C.D. Utah)
- *Douglas v. Purfoods LLC,* 4:23-cv-00332 (S.D. Iowa)
- *Williams v. Southwell Inc. & Tift Regional Health Systems Inc.*, 2023CV0328 (Tift County Superior Court)
- *Brichkowski v. OrthoConnecticut PLLC*, DBD-CV24-6050426-S (CT Sup. Ct.)

### BIOMETRIC CASES IN WHICH OUR FIRM HAS SERVED AS LEAD OR CO-COUNSEL

- *Aragon v. Weil Foot & Ankle Institute LLC*, 2021-CH-01437 (Cook County Cir. Ct.) (co-lead counsel in BIPA class action, settled on a class-wide basis)
- *Bore v. Ohare Towing Systems Inc.*, 2020-CH-02865 (Cook County Cir.) (co-lead counsel in BIPA class action, final approval granted)
- *Daichendt v. CVS Pharmacy Inc.,* 1:22-cv-03318 (N.D. Ill.) (co-counsel in BIPA class action)
- *Vargas v. Cermak Fresh Market Inc.,* 2020-CH-06763 (Cook County Cir. Ct.) (co-counsel in BIPA class action)
- *Karling v. Samsara Inc.*, 1:22-cv-00295 (N.D. Ill.) (co-counsel in BIPA class action)

4

- *Stegmeyer v. ABM Industries Incorporated, et al.*, 1:24-cv-00394 N.D. Ill.) (co-lead counsel in biometric class action)

## VIDEO PRIVACY PROTECTION ACT CASES IN WHICH OUR FIRM HAS SERVED AS LEAD OR CO-COUNSEL

- *Edwards v. Mubi Inc.,* 5:24-cv-00638 (N.D. Cal.) (co-counsel in VPPA class action)
- *John v. Delta Defense LLC & U.S. Concealed Carry Association Inc.*, 2:23-cv-01253 (E.D. Wisc.) (lead counsel in VPPA class action)
- *Jolly v. FurtherEd, Inc.,* 1:24-cv06401-LJL (S.D.N.Y.) (co-lead counsel in consolidated VPPA class action)

## FALSE LABELING CASES IN WHICH OUR FIRM HAS SERVED AS LEAD OR CO-COUNSEL

- *Levy v. Hu Products LLC*, 23-cv-01381 (S.D.N.Y.) (co-counsel in false labeling class action alleging defendant did not disclose the presence of lead in chocolate)
- *In re Trader Joe's Company*, 3:23-cv-00061 (S.D. Cal.) (co-counsel in false labeling class action alleging defendant did not disclose the presence of lead in chocolate)
- *Haymount Urgent Care PC v. Gofund Advance LLC*, 1:22-cv-01245 (S.D.N.Y.) (co-counsel in lawsuit alleging merchant cash advances were usurious loans)
- *Mandy Cliburn v. One Source Market, LLC, d/b/a HexClad Cookware*, 23-ST-cv-28930 (Cal. Sup. Ct.) (counsel in false labeling class action)
- *Fleetwood Services LLC v. Complete Business Solutions Group Inc.*, 2:18-cv-00268, (E.D. Penn.) (co-counsel in class action alleging merchant cash advances were usurious loans)
- *Obillo v. i-Health Inc. et al.*, 3:24-cv-02459 (N.D. Cal.) (co- lead counsel in in false labeling class action)
- *Kyungo et al v. Saks & Company, LLC et al*, 3:24-cv-06934 (N.D. Ca.) (counsel in false advertising class action)

## OUR TEAM

**David S. Almeida** is the Founder and Managing Partner of the Almeida Law Group LLC, headquartered in Chicago, Illinois.

Bringing a distinctive and highly seasoned perspective, he specializes in representing consumers in class action lawsuits. Notably, a significant portion of his career has been devoted to serving as a class action defense lawyer, representing hospital systems, medical providers, retail and hospitality companies, and various consumer-facing entities in class action lawsuits related to privacy. Before establishing ALG, David was a Partner at Benesch, Friedlander, Coplan and Aronoff LLP; while there, David founded and chaired the Class Action Practice Group and lead the Firm's Telephone Consumer Protection Act Team and its Retail, Hospitality and Consumer Products Practice Group.

A 1999 graduate of Cornell Law School, David has practiced law at prestigious firms in New York City and Chicago. David is admitted to the bars of New York, Illinois, Arizona and Wisconsin, as well as several federal courts, including the United States District for the Northern District of Illinois.

David's extensive experience spans over 350 class action lawsuits across the country. These cases encompass issues such as data breaches and privacy violations, state consumer fraud and deceptive business practices, false advertising and false labeling, as well as numerous statutory violations including the Telephone Consumer Protection Act, the Fair Credit Reporting Act, the Illinois Biometric Information and Privacy Act ("BIPA"), the Video Privacy Protection Act ("VPPA"), the Electronics Communication Privacy Act, 18 U.S.C. § 2511(1) ("ECPA"), the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"), the California Invasion of Privacy Act, Cal. Penal Code § 630, *et. seq.* ("CIPA"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL").

As a recognized authority in the field, David is well-versed in data privacy and security issues, direct and mobile marketing, emerging payment systems, as well as social and digital media matters. He is an author and speaker on these topics and is sought after by local and national publications for his insights. David has received multiple listings as an Illinois Super Lawyers and has been acknowledged as a "Rising Star" by the National Law Journal. He earned his Bachelor of Arts from Salisbury University, graduating *summa cum*

6

*laude*, and obtained his Juris Doctor from Cornell Law School, where he served as an Editor of the Cornell Law Review.

**Matthew J. Langley** is a partner at Almeida Law Group. Matthew leverages his extensive skills and experience cultivated as a federal prosecutor and defense attorney to champion the rights of individuals affected by unjust or deceptive practices. Prior to joining the Almeida Law Group, Matthew was as a partner at Benesch, Friedlander, Coplan and Aronoff LLP, collaborating with David in the firm's Class Action practice group and, among other matters, representing plaintiffs in a two-billion-dollar defamation suit involving election fraud claims.

Matthew began his legal career at Kirkland and Ellis where, as an associate, he defended corporate clients in high-stakes litigation, including representing AOL in a class action data breach involving the personal data of over 680,000 customers. He continued to represent corporate clients, as both plaintiffs and defendants, at K&L Gates in Miami, Florida before joining the United States Attorney's Office for the Southern District of Florida.

As an Assistant United States Attorney, Matthew worked in both the Major Crimes and the Economic Crimes Divisions, prosecuting crimes involving health care fraud, tax fraud, money laundering, identity theft, bank fraud, child pornography, and drug trafficking. He first-chaired ten jury trials, securing guilty verdicts in all ten cases and successfully argued appeals in front of the Eleventh Circuit Court of Appeals.

After leaving government service, Matthew worked as a securities class action attorney at Robbins Geller, where he played a crucial role in bringing securities fraud cases, helping to secure the recovery of millions of dollars for shareholders.

Matt has actively participated in numerous class action lawsuits, addressing issues such as data breach and privacy violations, state consumer fraud, deceptive business practices, false advertising and labeling, the Telephone Consumer Protection Act (TCPA), the Fair Credit Reporting Act (FCRA), Illinois' Biometric Information Privacy Act (BIPA), and the California Invasion of Privacy Act (CIPA).

Matt is admitted to the bar in New York, Florida, California and Illinois. He earned his Bachelor of Arts in English and Sociology from the University of Connecticut and his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Scholar.

7

**John R. Parker Jr.**, known as "J.R.," is a Partner with the Almeida Law Group. J.R. is a tenacious and successful litigator, handling intricate civil litigation from the investigative phase through settlement or trial in both state and federal courts, including appellate proceedings.

J.R.'s practice encompasses class action lawsuits, False Claims Act cases, Medi-Cal and Medicare fraud, consumer fraud, defective products and drugs, insurance bad faith, personal injury, medical malpractice, employment claims, civil rights, toxic tort, and environmental cases. He has taken on consumer class actions against prominent tech industry entities such as Facebook, Apple, and Zynga. J.R. has been appointed lead counsel in numerous class action cases by state and federal courts in California and nationwide.

Recognizing the human impact of personal or economic injuries resulting from the carelessness, negligence, or intentional acts of others, J.R. is deeply committed to representing ordinary individuals who lack the resources of the multinational corporations and insurance companies he holds accountable in his cases.

In addition to his legal ventures, J.R. has volunteered for the Eastern District of California Dispute Resolution Program and served as appointed counsel for the Eastern District of California's pro bono program. He earned his A.B. in Greek and Latin from the University of Georgia, graduating *summa cum laude*, and obtained his J.D. from Harvard Law School, where he served as Deputy Editor-in-Chief of the Harvard Journal of Law and Public Policy.

After law school, J.R. clerked for Judge Joseph A. Anderson, at the time Chief Judge for the United States District Court for the District of South Carolina. He then worked at a plaintiff's firm in Atlanta Georgia, and then a litigation boutique in Birmingham, Alabama, Spotswood, Sansom, and Sansbury LLC, where he defendant the FedEx Corporation in class action suits around the country. After the birth of his first child, he and his wife moved to Sacramento, California, where he worked for Kershaw, Cutter & Ratinoff LLP and then Cutter Law LLC, where he litigated and tried complex cases on behalf of ordinary people against large corporations and insurance companies. Some of his work before joining the Almeida Law Group LLC includes the following matters:

- *Doan v. State Farm*, Santa Clara Superior Court, 1-08-cv-129264 (co-lead counsel in certified class action against State Farm successfully tried and resulting in a global settlement of all State Farm fire policyholders in California)

8

- *U.S. ex rel. Bell v. Biotronik, Inc. et a*l., 18-cv-01391 (C.D. Cal.) (Lead Relator's counsel in a False Claims Act case against medical device company resulting in $12.95 million recovery by the United States)
- *Bohannon v. Facebook, Inc.,* 4:12-cv-01894-BLF (N.D. Cal.). (Appointed Class Counsel representing a certified nationwide class of minor Facebook users and their parents)
- *Phillips v. County of Riverside*, 5:19-cv-01231-JGB-SHK (C.D. Cal.) (Co-lead Class Counsel in a collective action and then 86 individual actions brought under FLSA on behalf of social workers employed by Riverside County, resulting in $4.55 million global settlement after decertification)
- *Pike v. County of San Bernardino*, 5:17-cv-01680 (C.D. Cal.) (Co-lead Class Counsel in certified collective action brought under FLSA on behalf of social workers employed by San Bernardino County)
- *Johnson v. CSAA*, 07AS03197 (Sacramento Superior Court) (Co-Lead Counsel in class action against CSAA relating to failure to waive deductible. Resolved by settlement providing complete cash reimbursement, plus interest. Settlement valued at over $80 million)
- *Shurtleff v. Health Net*, (Eastern District of California and Sacramento County Superior Court) (Co-Lead and Plaintiffs' Liaison counsel in class actions against Health Net for a breach of confidential information, resulting in a nationwide class settlement)
- *Parry v. National Seating & Mobility Inc*., 3:10-cv-02782-JSW (N.D. Cal.) (Appointed Class Counsel on behalf of representing nationwide class of sales representatives for medical equipment company in breach of contract case that settled on a class-wide basis after certification in the Northern District of California)
- *Zmucki v. Extreme Learning*, 111-cv-197630. (Santa Clara County Superior Court), (Appointed settlement class counsel on behalf of class of educators for wage and hour violations in the Northern District of California)

**Elena A. Belov** serves as Of Counsel at the Almeida Law Group.

An adept litigator, Elena began her legal career at Milbank LLP, a renowned international law firm. While there, she developed her skills in navigating complex commercial litigations and actively engaged in *pro bono* work focused on civil rights.

Motivated by a belief in justice for all, Elena devoted more than a decade of her practice to environmental work and public service before redirecting her passion toward advocating

9

for wronged plaintiffs. She had the privilege of clerking for Judge Cynthia M. Rufe in the U.S. District Court for the Eastern District of Pennsylvania, gaining firsthand insights into the intricacies of the federal judicial system. Elena also contributed to the field by teaching and practicing environmental law on behalf of pro bono clients at the University of Washington School of Law. And while working for the World Wildlife Fund, she supported Native Alaskan Tribes as well as State and Federal officials, including the U.S. Coast Guard, in their endeavors to safeguard Arctic ecosystems. Elena has collaborated with a diverse clientele, ranging from major banks and insurance companies to non-governmental organizations and individuals from various walks of life.

Elena investigates consumer rights violations and takes pride in combating companies that exploit individuals, whether through deceptive advertising, selling defective products, or neglecting user privacy. Elena graduated with honors from Barnard College in New York, earning a B.A. in Political Science, and received her Juris Doctor from the Georgetown University Law Center. During law school, she served as a member of the American Criminal Law Review, authoring several published articles, and worked in the Environmental Law Clinic, successfully representing the Mattaponi Tribe of Virginia in their fight to protect their water rights.

Elena is admitted to the New York State Bar, as well as the United States District Courts for the Southern and Eastern Districts of New York.

**Britany A. Kabakov** is an Associate Attorney at the Almeida Law Group.

A skilled trial lawyer and litigator, Britany began her career as a litigation associate at Kirkland & Ellis LLP in its Chicago office, where she gained experience as a defense attorney. While at Kirkland, Britany actively participated in two federal bellwether jury trials, contributing to the largest multidistrict litigation in U.S. history.

Britany had the privilege of clerking for Judge Sunil R. Harjani in the U.S. District Court for the Northern District of Illinois and externing for Judge Andrew G. Schopler in the U.S. District Court for the Southern District of California. Through these roles, Britany acquired comprehensive insights into the intricacies of federal litigation, spanning from the filing of a complaint through trial and post-trial motions.

Specializing in consumer class action lawsuits, Britany's practice focuses on privacy and false labeling cases, along with complex commercial disputes. She has represented clients in federal court, multidistrict litigation, and class action lawsuits involving defective

10

products, consumer fraud, toxic tort, environmental cases, information privacy, insurance, and contract disputes.

Committed to public service and advocating for all individuals, Britany has maintained an active pro bono practice focusing on civil rights, supporting civil liberty organizations in research and litigation efforts. During law school, she volunteered at the Legal Aid Society of San Diego's Domestic Violence Clinic, and prior to entering law school, Britany taught middle school social studies in Phoenix, Arizona.

Britany is admitted to the Illinois State Bar, as well as the U.S. District Court for the Northern District of Illinois. She graduated *magna cum laude* from Loyola University Chicago with a Bachelor of Arts in History and Secondary Education. Britany earned her Juris Doctor from the University of Chicago Law School, where she worked in the Environmental Law Clinic, representing conservation groups in Clean Water Act litigation.

**Luke Coughlin** is an Associate Attorney at the Almeida Law Group.

Luke is an accomplished litigator. Before joining the Firm, Luke was a litigation associate at Edelman, Combs, Latturner & Goodwin, LLC, where he worked on a wide range of consumer cases with focus on usury claims. His passion for protecting consumer rights is driven by his interest in using technical investigations to support and advocate for his clients. He is committed to advancing consumer protection through innovative, cross-disciplinary legal strategies.

While attending law school, Luke worked as a claims investigator at Rain Intelligence, combining technical investigation with comprehensive legal analysis across a broad spectrum of case types. His work emphasized a meticulous approach to fact-finding, leveraging technology to investigate illicit collection and use of sensitive personal data and other incursions against consumer rights.

Prior to law school, Luke gained extensive experience in the tech sector, including work at Wayfair, where his focus on technical processes and analysis laid the foundation for his legal career. He brings a unique blend of technical expertise and legal acumen to the Firm.

Luke is admitted to the Illinois State Bar as well as the Federal District Courts of the Northern District of Illinois, Southern District of Illinois, Northern District of Indiana and Southern District of Indiana.

11