# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIRKSTON SPANN II and ROCHELLE LAMPKIN, *on behalf of themselves and all others similarly situated,*<br><br>    Plaintiffs,<br><br> v.<br><br>SUPERIOR AIR-GROUND AMBULANCE SERVICE, INC.,<br><br>    Defendant. | Case No: 1:24-cv-04704<br><br>Judge Matthew F. Kennelly |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
866.252.0878
gklinger@milberg.com

David S. Almeida
Britany A. Kabakov
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

## **TABLE OF CONTENTS**

I.    INTRODUCTION. ........................................................................................................... 1

II.   SETTLEMENT TERMS. ............................................................................................... 3

   A.   The Settlement Class............................................................................................... 3

   B.   Class Member Benefits under the Settlement........................................................ 3

      1.   Reimbursement of Documented Monetary Losses. ....................................... 3

      2.   Identity Theft Protection & Credit Monitoring............................................... 4

      3.   Pro Rata Cash Payment .................................................................................. 4

      4.   Remainder Funds ........................................................................................... 4

      5.   Enhanced Data Privacy & Business Practices Commitments.......................... 4

III.  THE NOTICE PROGRAM. ........................................................................................... 5

IV.   LEGAL ARGUMENT .................................................................................................... 9

   A.   Final Class Certification for Settlement Purposes is Appropriate. ...................... 9

   B.   The Rule 23(a) Requirements Remain Satisfied.................................................... 9

   C.   The Rule 23(b)(3) Requirements Remain Satisfied............................................. 11

   D.   The Settlement Agreement Warrants Final Approval. ........................................ 12

      1.   Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class. ..................................................... 13

      2.   Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length. ............ 14

      3.   Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief..................... 14

         a.   Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval. ............................................................................. 14

         b.   Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective................. 16

         c.   Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable. ................................................................................................... 16

         d.   Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements. ................................. 17

      4.   Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably..................................................................................... 17

V.    CONCLUSION................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................................................. 17

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................................... 11, 12

*Day v. Check Brokerage Corp.*,
  240 F.R.D. 414 (N.D. Ill. 2007).............................................................................. 12

*Desue v. 20/20 Eye Care Network, Inc.*,
  2023 WL 4420348 (S.D. Fla. July 8, 2023)............................................................... 8

*Hale v. State Farm Mut. Auto. Ins. Co.*,
  2013 WL 1287054 (S.D. Ill. Mar. 28, 2013) ............................................................ 13

*Hashemi v. Bosley, Inc.*,
  2022 WL 18278431 (C.D. Cal. Nov. 21, 2022)......................................................... 15

*Hinman v. M and M Rental Center*,
  545 F. Supp. 2d 802 (N.D. Ill. 2008) ..................................................................... 10

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)............................................................................. 15

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
  2024 WL 2155221 (D.S.C. May 14, 2024)............................................................... 15

*In re Mexico Money Transfer Litig.*,
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ....................................................................... 8

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  2017 WL 2178306 (D. Minn. May 17, 2017)............................................................. 8

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ................................................................... 10

*In re TikTok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ................................................................ 9, 11

*Karpilovsky v. All Web Leads, Inc.*,
  2018 WL 3108884 (N.D. Ill. June 25, 2018) ............................................................ 9

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015).............................................................................. 17

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ................................................................ 10

*Pollard v. Remington Arms Co., LLC*,
  320 F.R.D. 198 (W.D. Mo. 2017) ............................................................ 8

*Savanna Grp., Inc. v. Trynex, Inc.*,
  2013 WL 66181 (N.D. Ill. 2013) ............................................................ 9

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ............................................................ 8

*Steele v. GE Money Bank*,
  2011 WL 13266350 (N.D. Ill. May 17, 2011) ...................................... 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ................................................................ 14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
  2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................................. 11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................ 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................ *passim*

**Other Authorities**

2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011) .................................. 14

Manual for Complex Litigation (Fourth) § 13.12 (2004) .......................... 13

Further to Federal Rule of Civil Procedure Rule 23(e), Plaintiffs Kirkston Spann II and Rochelle Lampkin ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, respectfully move this Honorable Court for final approval of the proposed settlement of this class action lawsuit. Defendant, through counsel, does not oppose this Motion.[1]

## I.    INTRODUCTION.

On November 14, 2024, this Court preliminarily approved a proposed class action settlement between Plaintiffs and Defendant Superior Air-Ground Ambulance Service, Inc. ("Superior Ambulance" or "Defendant" and together with Plaintiffs, the "Parties"). *See* ECF No. 30. Class Counsel's efforts created distinct monetary benefits for the approximately 995,000 Settlement Class Members in the form of a $3,250,000.00 non-reversionary common fund from which Settlement Class Members can (i) claim reimbursement for documented Monetary Losses up to $5,000.00; (ii) submit a claim for (2) two years of three-bureau credit monitoring; and (iii) receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid. Settlement Class Members will further benefit from equitable relief in the form of Defendant spending up to an additional $2,500,000.00 but not less than $1,500,000.00 on information security enhancements.

The Settlement involved a comprehensive notice program and user-friendly claims process which has been (and continues to be) implemented by the Settlement Administrator, Epiq Systems, Inc. ("Epiq"). *See* Declaration of Cameron R. Azari, Esq. Regarding Implementation & Adequacy of Notice Program ("Epiq Decl.") (attached hereto as **Exhibit 1**). The deadline to submit a claim

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Settlement Agreement and Release ("Settlement Agreement" or "S.A"), which was filed as Exhibit 1 to the Joint Declaration of Gary M. Klinger and David S. Almeida in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. *See* ECF No. 26-1.

is March 31, 2025. *Id*. ¶ 30. The Court-approved notice program provided direct notice by email or mail, the creation of a toll-free telephone number to answer Settlement Class Members' questions, and the creation of a Settlement Website. *Id*. ¶¶ 11-19 & 25-27. Commencing on March 5, 2025, Epiq also sent 345,578 reminder notices via email to all Settlement Class Members for whom a valid email address is available and the initial Email Notice was not returned as undeliverable, and who have not yet filed a Claim Form or requested exclusion from the Settlement. *Id*. ¶ 31. At the direction of Class Counsel, Epiq also commenced a targeted media campaign in order to boost the claims rate. *Id*. ¶¶ 20-24.

The reaction from Settlement Class Members has been positive and strongly supports final approval. The deadline to file objections or to request exclusion was February 28, 2025. *Id*. ¶ 28. Out of approximately 995,000 Settlement Class Members, only one Settlement Class Member has objected (0.0001% of the Settlement Class) and only fifteen have requested exclusion (0.00015% of the Settlement Class). *Id*. ¶ 28. The deadline to submit a claim is March 31, 2025 and 6,594 claim forms have been received thus far. *Id*. ¶ 30. This works out to a claims rate of approximately 0.62%, which is anticipated to increase as additional Claim Forms are filed with nearly three weeks until the March 31, 2025 Claims Deadline. *Id*. This claims rate is commensurate with the claims rate in other large data breach settlements finally approved by courts. Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks they would face through continued litigation, the Settlement is fair, reasonable, and adequate, and merits final approval.[2]

---

[2] In the interest of judicial efficiency, for the factual and procedural background of the proposed Settlement, Plaintiffs respectfully refer the Court to, and hereby incorporate by reference, the case summary and procedural history in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support, filed on November 7, 2024 and Motion for Attorneys' Fees, Costs, and Service Awards. *See* ECF Nos. 26 & 35-36.

## II.     SETTLEMENT TERMS.

### A.     The Settlement Class

The Settlement and Preliminary Approval Order (ECF No. 30) provide for a nationwide Settlement Class[3] defined as the approximately 995,000 individuals "residing in the United States whose Private Information was accessed and/or acquired by an unauthorized party as a result of the data breach that occurred within Defendant's computers systems in May 2023." ECF No. 30 ¶ 2.

### B.     Class Member Benefits under the Settlement

If finally approved, the $3,250,000.00 non-reversionary Settlement Fund will be used to make payments to Settlement Class Members and to pay Administration and Notice Costs as well as any Attorneys' Fees and Expenses and Service Awards approved by the Court. *See* S.A. ¶¶ 42 & 44. The benefits to the Settlement Class Members are reimbursement of Monetary Losses, Financial Account Monitoring, and Pro Rata Cash Payments.

#### 1.     *Reimbursement of Documented Monetary Losses.*

First, Settlement Class Members could make a claim for reimbursement of Monetary Losses fairly traceable to the Security Incident up to $5,000 per Settlement Class Member. S.A. ¶ 50(A).

---

[3] Excluded from the Settlement Class are: (i) Superior Air-Ground Ambulance Service, Inc. and its parents, subsidiaries, officers and directors, and any entity in which Defendant has a controlling interest; (ii) all Persons who submit a timely and valid Request for Exclusion from the Settlement Class; (iii) the Judge assigned to this litigation as well as their immediate family and staff; and (iv) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident, or who pleads *nolo contendere* to any such charge. *Id*.

### 2. *Identity Theft Protection & Credit Monitoring*

Second, Settlement Class Members could also claim two (2) years of three-bureau credit monitoring, with at least $1 million in fraud insurance. S.A. ¶ 50(C)(i).

### 3. *Pro Rata Cash Payment*

Third, Settlement Class Members could claim a Pro Rata Cash Payment, the amount of which will be determined based on the remainder of the Settlement Fund following payment of the Fee Award and Expenses, Service Awards, Administration and Notice Costs, costs of Financial Account Monitoring and reimbursement of documented Monetary Losses. S.A. ¶ 50(B)(i). Based upon the current claims rate, the estimated pro rata cash payment will be approximately $152 for each Settlement Class Member who makes a valid claim. *See* Epiq Decl. ¶ 30.

### 4. *Remainder Funds*

Fourth, any Remainder Funds shall be distributed in *cy pres* to a charitable organization jointly recommended by the Parties to be approved by the Court (or any other charitable organization approved by the Court). S.A. ¶ 54. Because the balance of the Settlement Fund will be "swept out" in direct Pro Rata Cash Payments to Settlement Class Members making valid claims, it is anticipated that any cy pres award will be nominal, and will only consist of funds associated with uncashed checks or non-redeemed electronic payments.

### 5. *Enhanced Data Privacy & Business Practices Commitments*

Fifth, Defendant has provided confidential information outlining the enhanced data security procedures it put in place following the Security Incident. S.A. ¶ 45(a). At the time of signing the Settlement Agreement, Defendant committed to spend up to $2,500,000.00 but not less than $1,500,000.00 on additional information security enhancements in the 24 months following execution. *Id.*

As of September 24, 2025, Defendant spent $2,084,399.08 in security enhancements. None of the past or future costs associated with these security procedures has been or will be paid by Plaintiffs or from the Settlement Fund. *Id.*

### III. THE NOTICE PROGRAM.

The Court appointed Epiq to disseminate class notice and to administer the Settlement. ECF No. 30, ¶ 10. In accordance with the Court's directive, Epiq employed direct notice that has been effective. On November 18, 2024, Epiq received three data files containing 1,059,301 records for the identified Settlement Class Members, including names and last known physical addresses ("Class List"). Epiq Decl. ¶ 11. Prior to sending Notice, Epiq sent all records to a third party to perform "reverse lookups" to try to identify the most likely valid email addresses for identified Settlement Class Members. *Id.* Epiq deduplicated and rolled-up the records and loaded the unique, identified Settlement Class Member records into its database. *Id.* These efforts resulted in 1,056,979 unique, identified Settlement Class Member records (of these records, 277 records did not have a valid email address or an associated physical address and were not sent Notice). *Id.*

An Email Notice was sent to all identified Settlement Class Members for whom a valid email address was available, and a Postcard Notice was sent via USPS first class mail to all identified Settlement Class Members with an associated physical address for whom a valid email address was not available or for whom the Email Notice was undeliverable after several attempts. *Id.* Commencing on December 30, 2024, Epiq sent 505,439 Email Notices to identified Settlement Class Members for whom a valid email address was available, using industry best practices for email notice. *Id.* ¶ 12. Also commencing on December 30, 2024, Epiq sent 526,824 Postcard Notices to identified Settlement Class Members with an associated physical address for whom an email address was not available. *Id.* ¶ 14. Prior to mailing notice, Epiq performed numerous

industry standard checks on the validity of the physical addresses. *Id.* ¶ 16. On January 22, 2025, Epiq sent 183,233 Postcard Notices to identified Settlement Class Members with an associated physical address for whom a valid email address was not available or the Email Notice was returned as undeliverable after several attempts. *Id*. ¶ 14. The Postcard Notices were sent via USPS first-class mail. *Id.* ¶ 15.

After all remailings, Epiq estimates that direct notice was successfully delivered to approximately 90% of the Settlement Class Members. *Id.* ¶¶ 7 & 18 . Additionally, a Long Form Notice and Claim Form ("Claim Package") was mailed to all persons who requested one via the toll-free telephone number or other means. As of March 4, 2025, Epiq has mailed 1,267 Claim Packages as a result of such requests. *Id.* ¶ 19. This reach rate is consistent with other court-approved, best-practicable notice programs and in excess of Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of targeted class members is considered a high percentage and the "norm" of a notice campaign. *Id.* ¶ 33.

In addition, commencing on March 5, 2025, Epiq sent an email reminder notice to 345,578 Settlement Class Members who have not yet submitted a claim, and for whom Epiq had a good email address. *Id.* ¶ 31 In addition to the direct notice, Epiq created a dedicated Settlement Website—https://www.superiorambulancesettlement.com. *Id*. ¶ 25. The Settlement Website "went live" on December 30, 2024 and contains a summary of the Settlement, important dates and deadlines such as the date of the Final Approval Hearing, Objection Deadline, Opt-Out Deadline and Claims Deadline, contact information for the Settlement Administrator, answers to frequently asked questions, downloadable copies of relevant documents, including the Long Form Notice, Claim Form, Settlement Agreement, Preliminary Approval Order, Complaint, a toll-free telephone number, and allowed Settlement Class Members an opportunity to file a Claim Form online. *Id*.

As of March 10, 2025, there have been 10,830 unique visitor sessions to the settlement website, and 55,124 web pages have been presented/viewed. *Id*.

On December 30, 2024, Epiq established a toll-free telephone number (1-888-891-8875) for the Settlement. *Id*. ¶ 26. Callers are able to hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package be mailed to them. *Id*. This automated telephone system is available 24 hours per day, 7 days per week. *Id*. The toll-free telephone number was prominently displayed in all notice documents. *Id*. As of March 10, 2025, there have been 4,083 calls to the toll-free telephone number representing 9,064 minutes of use. *Id*.

Finally, at the direction of Class Counsel, Epiq designed and implemented an internet digital notice campaign that will run from March 12, 2025, through March 31, 2025. *Id*. ¶¶ 20-24. The digital notices will be targeted to a selected audiences with a list activation campaign, which will match the email addresses of potential Settlement Class Members with current online profiles across *Google Display Network*, *Basis Ad Network, Facebook,* and *Instagram*, and then serve digital notices directly to those individuals to stimulate claim filing. *Id*. ¶ 21. The digital notices will link directly to the Settlement Website, allowing visitors easy access to relevant information to easily file an online Claim Form. *Id*. ¶ 22. The Notice Plan in this case was robust, and satisfied all due process requirements.

The Settlement has been well-received by the Settlement Class. Settlement Class Members have until March 31, 2025, to submit a claim. *Id*. ¶ 30. As of March 10, 2025, Epiq has received 6,445 Claim Forms online electronically through the Settlement Website and 149 Claim Forms on paper by mail. *Id*. This equates to a claims rate of approximately 0.62%, which is anticipated to increase as additional Claim Forms are filed. *Id*. Epiq is still in the process of reviewing and

validating Claim Forms. *Id.* As of March 10, 2025, Epiq has received fifteen timely requests for exclusion and one objection. *Id.* ¶ 28.

In comparable class action settlements, courts around the country have approved settlements "where the claims rate was less than one percent." *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017), aff'd, 896 F.3d 900 (8th Cir. 2018) (collecting cases); *see also Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (finding 0.83% claims rate "on par with other consumer cases"); *In re Target Corp. Customer Data Sec. Breach Litig.*, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), aff'd, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Desue v. 20/20 Eye Care Network, Inc.*, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (approving claims rate of 0.66%). In comparison, this litigation includes approximately 995,000 Class Members, but only fifteen have requested exclusion (an opt-out rate of only .0015% percent) and the claims rate is currently 0.62%, with nearly three weeks remaining until the Claims Deadline.

Finally, only one Settlement Class Members has objected to the proposed Settlement (an objection rate of .0001%). *See* Epiq Decl. ¶ 28. The objection expressed concern about the amount of attorneys' fees and costs requested. As described in Plaintiffs' Motion for Attorneys' Fees, the fees and expenses requested by Class Counsel are comparable to those granted in similar data privacy cases. *See* ECF No. 36 at 14-21. Such a low objection rate strongly supports a finding that the Settlement is "fair and reasonable." *See, e.g.*, *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (granting final approval of settlement with 25 objections & finding the fact that "99.9% of class members have neither opted out nor filed objections to the proposed settlements … is strong circumstantial evidence in favor of the settlements."). Plaintiffs submit the highly successful Notice Program implemented pursuant to the Settlement meets the

requirements of due process and Federal Rule of Civil Procedure 23 and should be finally approved.

## IV.  LEGAL ARGUMENT

### A.  Final Class Certification for Settlement Purposes is Appropriate.

On November 14, 2024, this Court provisionally found that the Settlement Class met the requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy—and the requirements of Rule 23(b)—predominance and superiority. ECF No. 31. Since this Order, there have been no developments that would alter this preliminary finding. The Settlement Class should now be finally certified for settlement purposes.

### B.  The Rule 23(a) Requirements Remain Satisfied.

***Numerosity.*** Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "A class of forty generally satisfies the numerosity requirement." *See, e.g.*, *Savanna Grp., Inc. v. Trynex, Inc.*, 2013 WL 66181, at *4 (N.D. Ill. 2013); *Karpilovsky v. All Web Leads, Inc.*, 2018 WL 3108884, at *6 (N.D. Ill. June 25, 2018) (same). Here, there are approximately 995,000 Settlement Class Members. Joinder is therefore impracticable and the Settlement Class satisfies the numerosity requirement.

***Commonality.*** The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "there are numerous common contentions capable of class wide resolution" *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 922 (N.D. Ill. 2022) (cleaned up). Indeed, common questions include (i) whether Settlement Class Members' Private Information was compromised in the Security Incident; (ii) whether Defendant owed a duty to Plaintiffs and Settlement Class Members to protect

their Private Information; (iii) whether Defendant breached its duties; and (iv) whether Defendant violated the common law and statutory violations. Thus, the commonality requirement is met.

*Typicality*. Plaintiffs satisfy the typicality requirement under Rule 23 because their claims based on Defendant's alleged failure to protect Plaintiffs' and Settlement Class Members' Private Information are coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006) (upholding typicality finding). Plaintiffs allege that their Private Information was compromised and that they were impacted by the same inadequate data security that harmed the Settlement Class. *See Hinman v. M and M Rental Center*, 545 F. Supp. 2d 802, 806–07 (N.D. Ill. 2008) (explaining that where defendant engages "in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct," typicality is "generally met"). As such, typicality is met.

*Adequacy*. The adequacy requirement is satisfied where (i) there are no antagonistic interests between the named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the Settlement Class. Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied.

**C.** **The Rule 23(b)(3) Requirements Remain Satisfied.**

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3) which has two components: (i) predominance and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is a superior method for the fair and efficient resolution of the matter. *Id.*

1. **Predominance.** The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims are based on Defendant's uniform conduct related to a Security Incident that affected all Settlement Class Members in a similar manner. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect their Private Information. That question can be resolved, for settlement purposes, using the same evidence for all Settlement Class Members, and therefore, makes class-wide settlement appropriate. *See, e.g.*, *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)") (cleaned up); *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 926 (finding predominance in data privacy case).

2. **Superiority**. Furthermore, class-wide resolution is the most practical method of addressing the alleged violations in this case. While the total economic harm caused by the Security Incident is significant, each individual claim is small compared to the costs of litigating it separately. There are hundreds of thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal

redress. *See, e.g.*, *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 419 (N.D. Ill. 2007) ("Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual litigation."). Because the claims are being certified for purposes of settlement, there are no issues with manageability and resolution of thousands of claims in one action is superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

In sum, the proposed Class's claims satisfy Rule 23(b)(3)'s requirements and should be certified. Adjudicating individual actions here is impracticable—the amount in dispute for each class member is small, the technical issues involved are too complex, and the required expenses costly. Thus, the Court may continue to certify the Class for settlement.

### D. The Settlement Agreement Warrants Final Approval.

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement is fair, adequate, and reasonable the Court considers the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).These considerations overlap with the factors articulated by the Seventh Circuit prior to the amendment of Rule 23 in 2018 which include: (i) the strength of plaintiffs' case compared to the terms of the settlement; (ii) the complexity, length, and expense of continued litigation; (iii) the amount of opposition to the settlement; (iv) the presence of collusion in gaining a settlement; and (v) the stage of proceedings and amount of discovery completed. *See Hale v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 1287054, at \*12–13 (S.D. Ill. Mar. 28, 2013) (citations omitted). Under these factors, approval of the Settlement is warranted.

### 1. Fed. R. Civ. P. 23(e)(2)(A): Class Representatives & Class Counsel have Adequately Represented the Settlement Class.

Class Counsel have ample experience litigating data breach class actions and are well-versed in the legal claims and risks of this case. As explained in Class Counsels' Joint Declaration submitted with Plaintiffs' Unopposed Motion for Preliminary Approval, Class Counsel worked diligently to advance Plaintiffs' and Settlement Class Members' interests. *See* ECF No. 26-1. Prior to reaching the Settlement, Class Counsel researched and drafted the complaints, consolidated their cases, filed the Operative Complaint, scheduled and participated in meet and confers with Counsel for Defendant, reviewed informal discovery, and participated in a mediation. *Id.*; *see also T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at \*11 (N.D. Ill. Mar. 25, 2022) (granting final approval where "[t]he parties engaged in substantial informal discovery and information sharing over a five-month period"); Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations); *id.* § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery"). The procedural history of the case supports finding that Plaintiffs and the Settlement Class were adequately represented.

Plaintiffs are also adequate representatives of the Settlement Class. Plaintiffs' interests are coextensive with the interests of the Settlement Class. Here, as discussed *supra*, Plaintiffs' claims are aligned with the claims of the other Settlement Class Members. Accordingly, they have every incentive to vigorously pursue the claims of the Settlement Class as they have done to date by remaining actively involved in this Action since its inception, participating in the investigation of the case, reviewing pleadings, remaining available for consultation throughout settlement negotiations, and reviewing the Settlement Agreement. This factor favors final approval.

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length.

"A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011); *see also Steele v. GE Money Bank*, 2011 WL 13266350, at *4 (N.D. Ill. May 17, 2011), *report and recommendation adopted*, 2011 WL 13266498 (N.D. Ill. June 1, 2011). This presumption is applicable here because the Settlement resulted from good faith, arm's-length negotiations including a mediation with an experienced data breach class action mediator, Bennett G. Picker, Esq., and numerous telephone conferences between experienced counsel with a comprehensive understanding of the strengths and weaknesses of each party's claims and defenses. This Settlement was reached only after informal discovery and meticulous investigation of the Security Incident. This factor supports final approval of the Settlement.

### 3. Fed. R. Civ. P. 23(e)(2)(C): the Settlement Provides Substantial Relief.

a. <u>Fed. R. Civ. P. 23(e)(2)(C)(i): the Costs, Risk, and Delay of Trial and Appeal Favor Final Approval.</u>

The most important settlement-approval factor is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). Nevertheless, "[b]ecause the

essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement provides for substantial monetary relief, as well as equitable relief in the form of data security enhancements. All Settlement Class Members are eligible to submit a claim to have their documented Monetary Losses reimbursed up to $5,000.00; submit a claim for two years of three-bureau credit monitoring; and receive a pro rata share of the amounts remaining in the Settlement Fund after all costs and expenses are paid. Settlement Class Members will further benefit from equitable relief in the form of Defendant spending up $2,500,000.00 but not less than $1,500,000.00 on information security enhancements designed to ensure Settlement Class Members information is better protected in the future.

The value achieved through the Settlement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Although Plaintiffs believe in the merits of their claims, success is not guaranteed. Should litigation continue, Plaintiffs face significant risks. Data breach cases are complex, with novel issues and evolving laws posing hurdles even at the pleading stage. *See e.g., Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *28 (C.D. Cal. Nov. 21, 2022) (explaining that in data breach class actions damages methodologies are largely untested and have yet to be presented to a jury). Class certification is another hurdle—and one that has been denied in other data breach cases. *See e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, 2024 WL 2155221 (D.S.C. May 14, 2024). Further, if litigation were to continue, Defendants would continue to vigorously defend the case and the litigation could potentially span for years. Considering all of this, Plaintiffs' likelihood of success at trial is not certain. Considering these risks, the $3,250,000 non-

15

reversionary Settlement Fund is a substantial recovery for the Settlement Class. The Settlement benefits are, therefore, fair, adequate, and reasonable compared to the range of possible recovery.

        b.        <u>Fed. R. Civ. P. 23(e)(2)(C)(ii): Method of Providing Relief is Effective.</u>

Under Rule 23(e), "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," is also a relevant factor in determining the adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Notice program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To file a claim, Settlement Class Members needed only to complete a simple Claim Form to opt into a pro rata cash payment and identity theft protection and reimbursement for out-of-pocket losses with documentation supporting any claimed losses.

Settlement Class Members were able to submit claims online or through the mail. Epiq Decl. ¶¶ 29-30. The claims administrator, Epiq, is an experienced and nationally recognized class action administration firm. *Id*. ¶¶ 2 & 5. This procedure is claimant-friendly, efficient, cost-effective, and reasonable under the particular circumstances of this case. This is evident by the number of claims received by Epiq. As of March 10, 2025 (with the claim period still open until March 31, 2025), Epiq has received 6,594 claim forms from Settlement Class Members, which equates to a claims rate of 0.62% percent. *Id*. ¶ 30. This compares favorably with claims rates observed in other data breach class action settlements. *See supra* pg. 8. Accordingly, the methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

        c.        <u>Fed. R. Civ. P. 23(e)(2)(C)(iii): Proposed Award of Attorneys' Fees is Fair and Reasonable.</u>

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorneys' fees, including timing of payment." In accordance with Rule 23(e) and the Settlement

Agreement, Class Counsel filed a motion seeking $1,000,000.00, or 30.7% of the Settlement Fund, and $13,101.25 as reimbursement for litigation expenses. This fee and expense request falls in line with other awards in data privacy cases as discussed in Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards. *See* ECF No. 36.

d.    <u>Fed. R. Civ. P. 23(e)(2)(C)(iv): No Additional Agreements.</u>

As no additional agreements requiring identification exist, this factor does not weigh in favor of or against final approval.

**4.   *Fed. R. Civ. P. 23(e)(2)(D): the Settlement Agreement Treats Settlement Class Members Equitably.***

Finally, Rule 23(e) requires that the settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between any members of the Settlement Class. All Settlement Class Members are eligible to submit a claim for the following: documented Monetary Losses up to $5,000.00; two years of three-bureau credit monitoring; and a pro rata share of the amounts remaining in the Settlement Fund after all other costs and expenses are paid. Plaintiffs Kirkston Spann II and Rochelle Lampkin seek a Service Award of $2,500. These requested awards are well within the range that Courts within the Seventh Circuit routinely approve. *See, e.g.*, *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (finding "a $5,000 reward is justified based on Kolinek's role working with class counsel, approving the settlement agreement and fee application, and volunteering to play an active role if the parties continued litigating through trial"); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc*., 2012 WL 651727, at * 16 (N.D. Ill. Feb. 28, 2012) (approving $25,000 service awards).

## V.    CONCLUSION

Because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully

request that the Court grant final approval of class action settlement and enter the proposed Order.

Date: March 11, 2025                    Respectfully submitted,

*/s/ David S. Almeida*

David S. Almeida
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
866.252.0878
gklinger@milberg.com

***Interim Co-Lead Class Counsel***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ David S. Almeida* _____
